No. 2--00--0893

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

GEORGE HISCOTT and JUNE ) Appeal from the Circuit Court

HISCOTT, ) of Lake County.

)

Plaintiffs-Appellees, )

)

v. ) No. 98--L--701

)

ROSS PETERS, ) 

)

Defendant-Appellee )

)

(Ronald Weidner, Indiv., and ) Honorable

Ronald Weidner, Inc., ) Charles F. Scott,

Defendants- Appellants). ) Judge, Presiding. ) 

______________________________________________________________________________

JUSTICE RAPP delivered the opinion of the court:

Defendants Ronald Weidner (Ronald Weidner or Mr. Weidner) and Ronald Weidner, Inc. (collectively Weidner), appeal from the judgment in favor of plaintiffs, George and June Hiscott, following a jury trial.  It is the contention of Weidner that (1) the trial court erred in admitting the opinion testimony of a reconstruction expert; (2) the trial court erred in excluding circumstantial evidence that defendant Ross Peters was using his cellular telephone immediately prior to the accident; (3) the trial court erred in submitting itemized verdict forms allowing the jury to return separate damages for emotional distress; (4) the trial court erred in permitting the Hiscotts to amend their pleadings after judgment; (5) the jury's allocation of fault between the defendants was against the manifest weight of the evidence; and (6) the jury's award for future pain and suffering to June Hiscott was against the manifest weight of the evidence.

I.  FACTS

The Hiscotts originally filed this action for personal injury in the circuit court of Cook County on June 17, 1998.  On August 5, 1998, the case was transferred to Lake County.  Peters also filed an action against Weidner seeking to recover for his own bodily injuries; that case was consolidated with this action but voluntarily dismissed shortly before trial.

On November 19, 1998, the Hiscotts filed their first amended complaint.  Counts I and II alleged negligence against Weidner.  Counts III and IV alleged negligence against Peters.  The Hiscotts sought damages for their injuries, including emotional trauma.

Peters and Weidner filed contribution counterclaims against each other.  Prior to trial, the trial court partially granted Weidner's motion 
in limine
 requesting the trial court to bar portions of the accident reconstruction opinion testimony of Robert Seyfried.  The trial court barred any opinion testimony from Seyfried regarding the path of travel of Peters's vehicle and whether his vehicle went into a "yaw" or side-slip without a sufficient foundation.  The trial court reserved its ruling on part of Peters's motion 
in limine
 as to the use of his cellular telephone at the time of the accident.

Trial began on March 20, 2000.  Ronald Weidner testified as an adverse witness.  On June 17, 1997, at approximately 1:20 p.m., Mr. Weidner was driving a red Dodge pickup truck northwest on Route 60/83.  He had perceived a problem with the braking of the truck from the time he purchased it eight months earlier.  According to Mr. Weidner, when he would slam on the brakes the vehicle pulled left or right.  He took the vehicle to be repaired six or seven times, but he still thought there was a problem with the braking.  

According to Mr. Weidner, the weather was clear and the roads were dry on the day of the accident, although the roads were "oily" from all the traffic.  He was traveling northwest on Route 60/83, following a white Cadillac.  The Cadillac was approximately 60 feet in front of him.  The Cadillac then turned to the right, partially onto the shoulder, and braked, simultaneously.  At that time, Mr. Weidner saw a large white van stopped in the northwest lane of travel.  He saw a Lincoln about 220 feet ahead of him in the opposite lane of travel.  When he realized that he was going to hit the van, Mr. Weidner decided to hit the rear left side of the van with the front passenger side of his truck.  When he hit the brakes, his truck started to skid forward to the left.  The impact pushed the front end of his truck about 12 to 18 inches over the center line.  Mr. Weidner testified that a skid mark left by his truck showed it curling into the opposite lane of travel.

According to Mr. Weidner, the Lincoln was approximately 70 feet away when the impact occurred.  He saw the Lincoln go past him, hit its brakes, and turn onto the gravel.  The Lincoln then moved across the center line and hit the Hiscotts' vehicle head-on, completely within the northwest lane of travel. 

Ross Peters testified that on June 17, 1997, at approximately 1:20 p.m., he was traveling south on Route 60/83 in his blue 1994 Lincoln.  There was no traffic in front of him for at least 13 or 14 car lengths, when a red truck suddenly appeared before him, covering most of his lane of travel.  Peters then turned his car to the right as hard as he could and hit the gravel shoulder.  Peters did not recall any other events of the accident until after the impact.  After the accident, Mr. Weidner told Peters that he hit the guy in front of him, went into Peters's lane of traffic, and that he was sorry.

On cross-examination, Peters could not recall if he applied his brakes when he saw the red truck entering his lane of traffic.  Peters denied using a cellular telephone at the time of the accident, and the jury was instructed to disregard this testimony.  Weidner's counsel made an offer of proof of Cellular One billing records to show that Peters used his cellular telephone for one minute between 1:14 p.m. and 1:15 p.m. and that he made a two-minute call to the same telephone number at 1:29 p.m.  The trial court barred this evidence, finding that there was no direct evidence that Peters was using his cellular telephone at the time the accident occurred.

Peters's counsel requested the trial court to reconsider its ruling on Weidner's motion 
in limine
 concerning the opinion testimony of accident reconstructionist Robert Seyfried.  The trial court reiterated that it was standing by its prior ruling.

Traffic accident reconstructionist Robert Seyfried then testified that he reviewed the traffic accident report, photographs of the accident scene, and the vehicles.  Seyfried also reviewed the depositions of Mr. Weidner, Deputy Allan Burns, Charles Behrendt, and Peters.  Seyfried visited the scene of the accident on October 11, 1999, more than two years after the accident, to become familiar with it.  From the police report, he reviewed a number of measurements of skid marks left by the Weidner truck.  He also reviewed a gouge mark in the pavement left by the impact of the Peters and Hiscott vehicles.  According to Seyfried, Weidner's truck left 69 feet of skid marks.  Seyfried concluded that 195 feet was required by Peters to make the maneuver he did at the time of the accident and that the total maneuver took a little more than three seconds.  According to Seyfried, Peters's maneuvers were limited by friction between the roadway and shoulder surfaces and the tires of his vehicle.  Seyfried stated that 176 feet would have been the minimum distance of making the steering maneuver.  Seyfried opined that Peters had little less than a second to react to the Weidner truck coming into his lane and that Peters was reacting to an emergency situation.  According to Seyfried, it would have taken approximately two-thirds of a second for Peters, traveling at 40 miles per hour, to steer his vehicle away from the Weidner truck and move onto the gravel shoulder.

Seyfried stated that once Peters was on the gravel shoulder he had to react to being on the gravel and steer back left to avoid going off the outside edge of the shoulder.  In order to get back onto the road, Peters steered back to the left very quickly.  In his opinion, this would likely have caused the vehicle to "yaw," or slide partially sideways.

On cross-examination, Seyfried admitted that there were no "yaw" marks noted or measured by the police or noted on the police report, nor did the police report indicate where Peters went onto the shoulder or where he returned to the road.  Additionally, Seyfried admitted that there was no physical evidence of Peters braking his vehicle.  Seyfried also admitted that it was pure speculation as to when Peters first saw Weidner's truck, how long it took Peters to react, where Peters left the roadway, or where Peters returned to the roadway.

Dr. Thomas Baier testified via video evidence deposition concerning the injuries sustained by the Hiscotts.  Dr. Baier did not testify concerning any emotional distress suffered by the Hiscotts.

Lake County sheriff's deputy Allan Burns testified that he investigated the accident.  The call came in at 1:20 p.m., and Burns was dispatched at 1:21 p.m.  According to Burns, it was a dry, sunny day.  The roadway was not oily or slick.  Ronald Weidner told Burns that he was westbound on Route 60/83; that there was a white Cadillac in front of him; that the Cadillac had swerved to the right, onto the shoulder, to go around the vehicles; that he did not realize that the other traffic was stopped; and that he was unable to stop before making contact with the white van.  Peters told Burns that he saw the accident with the red truck ahead and that he swerved to the right onto the gravel shoulder, lost control of his vehicle, came across the eastbound lane of traffic, went into the westbound lane of traffic, and struck the white vehicle head-on.

According to Burns, each lane was approximately 12 feet wide, with shoulders approximately 7½ feet wide.  The skid marks left by Weidner's truck measured 93 feet 1 inch, and veered to the left, with the front left tire coming to a stop approximately 12 inches into the oncoming lane of traffic.  Burns stated that the overhang of the truck would have extended into the oncoming lane of traffic another six to eight inches beyond the tire.  There was no evidence that Weidner's vehicle had gone fully into the oncoming lane of traffic.  Burns stated that there was nothing obstructing Peters's view.

On cross-examination, Burns testified that Peters's vehicle was approximately 6½ feet wide and that if Weidner's vehicle was 1½ feet over the center line, Peters would have had approximately 10½ feet of road surface to travel on.  On further cross-examination, Burns admitted that there was a tree trunk in close proximity to the shoulder where Peters left the roadway.

June Hiscott recalled that on the day of the accident she saw a car to her left careening and then the crash occurred and she heard glass break.  She next recalled waking up in an ambulance and later waking up in the hospital.  Mrs. Hiscott testified concerning her injuries and the impact that the accident has had on her life.  Mrs. Hiscott incurred $87,757 in medical expenses as a result of the accident, of which $79,757 have been paid.

George Hiscott testified that at the time of the accident he was driving a 1984 Chrysler Park Avenue.  Mr. Hiscott recalled that, with a second's notice, he saw a car heading out of the gravel across the road into his path.  He braked and locked the wheels and braced himself.  Mr. Hiscott testified concerning his injuries and the impact that the accident has had on his and Mrs. Hiscott's lives.  Mr. Hiscott incurred $24,800 in medical expenses as a result of the accident.

Charles Behrendt testified by video evidence deposition taken on March 16, 2000.  Behrendt testified that he is a letter carrier for the United States Postal Service in Mundelein.  On June 17, 1997, Behrendt was heading north, delivering mail to 26321 Route 83.  It was a clear and sunny day.  Behrendt had delivered this mail route for nearly 15 years.  According to Behrendt, the street ran generally northwest and southeast, with a single lane in each direction and a six- or seven-foot-wide shoulder on each side.  The speed limit was 40 or 45 miles per hour.

Behrendt was stopped on the shoulder approximately 20 yards south of Hickory Street on the east side of Route 60/83, delivering mail to a mailbox.  As he looked north on Route 83, he saw several vehicles stopped.  The first vehicle, in a line of six or seven vehicles, was making a left turn onto Walnut Street.  The last vehicle in line was a white or gold cargo van.

After making his mail delivery, Behrendt looked out his side view mirror and saw a white Cadillac pass.  A second or two later, a red truck passed.  He estimated that the vehicles were traveling at the speed limit, with the red truck trailing the Cadillac by two car lengths.  The Cadillac's driver hit his brakes when he was only one or two car lengths from the rear of the van, swerved, and went part way onto the shoulder, leaving part of the car on the roadway.  When the Cadillac swerved around the van, it did not collide with it, but stopped at an angle, with the front end in the gravel and three or four feet of the back end on the roadway.  The driver of the red truck hit his brakes at about the same time as the Cadillac.  The Cadillac left the scene.

According to Behrendt, it appeared that the front of the red truck collided at a slight angle with the rear of the van, pushing the van forward into a green Jeep.  The red truck moved or "bounced" to the left, approximately one foot into the opposite lane of travel and stopped.

Behrendt then saw a blue Lincoln coming from the opposite direction.  The Lincoln drove on the shoulder around the red truck.  Dust was flying, but Behrendt could not recall if two or all four of the Lincoln's tires were on the gravel.  When the Lincoln hit the corner of the gravel at Hickory Street, the driver appeared to turn his steering wheel to the left because the car veered onto the roadway, directly at Behrendt's mail truck.  Behrendt had a clear view of the driver of the Lincoln.  According to Behrendt, it appeared that the driver of the Lincoln had only one hand on the steering wheel.  Behrendt thought that the Lincoln was going to hit the side of his mail truck.  At that time, a head-on collision occurred between the Lincoln and another vehicle that was traveling north on Route 60/83.  The collision took place approximately two feet from the side of his mail truck.  Only four or five seconds elapsed between the time Behrendt saw the Lincoln on the gravel until the head-on collision took place.  The two vehicles came to a complete stop on impact.

Behrendt did not think that the driver of the Lincoln applied his brakes before the collision.  Behrendt estimated that the whole accident spanned approximately 10 seconds.

The jury returned an itemized verdict in favor of George Hiscott totaling $229,800.  Of this amount, the jury awarded $24,800 for past medical expense, $50,000 for past pain and suffering, $5,000 for future pain and suffering, and $150,000 for emotional distress.

The jury returned an itemized verdict in favor of June Hiscott totaling $529,757.  Of this amount, the jury awarded $79,757 for past medical expense, $10,000 for future medical expense, $100,000 for past pain and suffering, $110,000 for future pain and suffering, $50,000 for disability, $30,000 for disfigurement, and $150,000 for emotional distress.

The jury found Peters to be 10% at fault and Weidner to be 90%  at fault.  The trial court entered judgment on the verdicts.  On June 27, 2000, the trial court denied Weidner's posttrial motion for a new trial or remittitur.  The trial court also granted the Hiscotts leave to amend the pleadings to support claims for negligent infliction of emotional distress.  Weidner timely appealed.

II.  EXPERT'S OPINION TESTIMONY

Weidner argues that the trial court erred in admitting the opinion testimony of reconstruction expert Robert Seyfried.  Weidner does not claim that Seyfried was unqualified to give expert reconstruction testimony.  Rather, Weidner contends that there was insufficient physical evidence to provide an adequate basis upon which to reconstruct the accident.  Specifically, Weidner argues that the trial court erred in permitting Seyfried to testify that Peters was faced with an emergency situation and that his vehicle likely went into a "yaw" once it left the gravel shoulder and returned to the pavement; Weidner also argues that it was error to permit Seyfried to testify as to the path that Peters's vehicle took when there was no physical evidence to support such opinion.

We note that this testimony had specifically been barred by the trial court in granting Weidner's motion 
in limine
 and that the trial court reiterated that it was standing by its ruling immediately before Seyfried testified.  Despite the trial court's prior ruling, and over Weidner's counsel's objections, Seyfried was permitted to testify concerning the path of Peters's vehicle and that his vehicle likely went into a "yaw" once it left the gravel shoulder and returned to the pavement.  This testimony obviously violated the trial court's prior order 
in limine
.  In any event, we will review the admissibility of Seyfried's testimony.

Generally, the opinion testimony of an expert is admissible if the expert is qualified by knowledge, skill, experience, training, or education in a field that has "at least a modicum of reliability," and if the testimony would aid the jury in understanding the evidence.  
Wiegman v. Hitch-Inn Post of Libertyville, Inc.
, 308 Ill. App. 3d 789, 799 (1999). The admission of an expert's testimony lies within the sound discretion of the trial court.  
Wiegman
, 308 Ill. App. 3d at 799.  We will not reverse an erroneous ruling unless the error was prejudicial or the result of the trial has been materially affected.  
Stricklin v. Chapman
, 197 Ill. App. 3d 385, 388 (1990).

Peters cites 
Wiegman
 and 
Soto v. Gaytan
, 313 Ill. App. 3d 137 (2000), for the proposition that, if the trial court finds that the expert is qualified and that his testimony would aid the jury in understanding the evidence, the expert's opinion testimony is admissible and the weight to be assigned to the expert's opinion is for the jury to determine.  However, Peters fails to acknowledge that the admission of an expert's testimony requires the proponent to lay an adequate foundation establishing that the information upon which the expert bases his opinion is reliable.  
Soto
, 313 Ill. App. 3d at 146.  It is the function of the trial court, and not the jury, to determine whether the foundational requirements have been met.  See 
City of Chicago v. Anthony
, 136 Ill. 2d 169, 186 (1990).  Here, Peters attempts to convert a question of law to be determined by the trial court (
i.e.
, whether there was a sufficient basis for the expert's opinions) into a question of fact for the jury (
i.e.
, would the jury reject the expert's opinions based on an insufficient basis for his opinions).

An expert's opinion is only as valid as the reasons for the opinion.  
Soto
, 313 Ill. App. 3d at 146.  Reconstruction testimony seeks to recreate the accident.  
Stricklin
, 197 Ill. App. 3d at 389.  For reconstruction testimony to be admissible, there must be sufficient data about the accident in evidence to provide a reasonable basis for the expert's opinion.  J. Corkery, Illinois Civil & Criminal Evidence §702.111, at 408 (2000).  Thus, there must be sufficient physical evidence present to provide the basic data needed to reconstruct the accident.  See 
Stricklin
, 197 Ill. App. 3d at 389; see also 
Abramson v. Levinson
, 112 Ill. App. 2d 42, 47, 51 (1969).  As this court noted in 
Soto
:

"The trial court is not required to blindly accept the expert's assertion that his testimony has an adequate foundation.  Rather, the trial court must look behind the expert's conclusion and analyze the adequacy of the foundation."  
Soto
, 313 Ill. App. 3d at 146.

"An expert witness' opinion cannot be based on mere conjecture and guess."  
Dyback v. Weber
, 114 Ill. 2d 232, 244 (1986); see also 
Modelski v. Navistar International Transportation Corp.
, 302 Ill. App. 3d 879, 886 (1999) (experts' opinions based on guess, speculation, or conjecture as to what the witness believed might have happened are inadmissible).  As the court observed in 
Abramson
, the test of the admissibility of an expert's opinion testimony:

"rests on a determination as to whether or not it is necessary to rely on knowledge and the application of principles of physics, engineering or other sciences which are beyond the normal ken of the average juror.  Its admissibility is further limited by whether or not there is sufficient undisputed physical evidence to provide the basic data needed for the application of principles of physics, engineering or science.  Absent such basic and essential facts, the opinion of any expert is as much speculation, guesswork and conjecture as would be a jury's verdict based on the absence of basic and necessary facts.  Neither has any probative value."  
Abramson
, 112 Ill. App. 2d at 47.

In reviewing the record in this case, we are convinced that the trial court abused its discretion in allowing Seyfried to testify concerning the maneuvering and path of Peters's vehicle.  Seyfried admitted that there were no "yaw" marks in the pavement or any other physical evidence that Peters's vehicle was "yawing," nor was there any physical evidence of Peters's  braking.  Seyfried also admitted that his opinion was not based on any physical evidence of where Peters left or returned to the roadway.  Seyfried based his opinion on the impressions of time and distance provided by the parties and Mr. Behrendt.  There was simply no concrete factual basis to support Seyfried's opinion because there was insufficient physical evidence to provide him with the basic data needed to reconstruct the accident.  As such, Seyfried's opinion amounted to pure speculation and could not possibly assist the jury in understanding the evidence.  Accordingly, the trial court erred in admitting the opinion testimony of reconstruction expert Robert Seyfried.

Furthermore, Seyfried's testimony related directly to the central controversies in the case: how the collision took place, who was at fault, and the degree of fault assigned to each defendant.  Accordingly, the admission of Seyfried's testimony cannot be said to have had no effect on the outcome of the trial.  We believe that this error may have tipped the scales with regard to the jury's assignment of liability between the defendants.  Therefore, the cause must be remanded for a new trial between the defendants on the issue of the allocation of fault.

III.  EVIDENCE OF USE OF CELLULAR TELEPHONE

Weidner argues that the trial court erred in excluding circumstantial evidence that Peters was using his cellular telephone immediately prior to the accident.  The admissibility of evidence is committed to the sound discretion of the trial court, and we will not disturb its decision absent a showing of a clear abuse of discretion resulting in substantial prejudice affecting the outcome of the trial.  
Wojcik v. City of Chicago
, 299 Ill. App. 3d 964, 971 (1998).

Generally, relevant evidence is admissible.  
Galowich v. Beech Aircraft Corp.
, 209 Ill. App. 3d 128, 135 (1991).  "Evidence is relevant if it tends to either prove a fact in controversy or render a matter in issue more or less probable, and each party may present evidence relevant to his theory of the case or inconsistent with an opponent's theory."  
Galowich
, 209 Ill. App. 3d at 135.  The issue of the admissibility of evidence concerning what a party was doing before an accident turns on the degree to which the evidence tends to show what actually or most probably occurred at the time of the accident.  
Klavine v. Hair
, 29 Ill. App. 3d 483, 487 (1975).  Each case must be decided on its own facts.  
Spencer v. Wandolowski
, 264 Ill. App. 3d 611, 618 (1994).

Here, the trial court found that there was no direct evidence that Peters was using his cellular telephone at the time of the accident.  While we recognize that this is circumstantial evidence, generally, any fact or issue may be proved by circumstantial as well as by direct evidence.  
Kosh v. Monroe
, 104 Ill. App. 3d 1085, 1091 (1982).  The record indicates that the accident was reported to the police at 1:20 p.m., and Weidner's offer of proof showed that Peters used his cellular telephone between 1:14 p.m. and 1:15 p.m.  We are mindful that all clocks are not synchronized, and that it may have taken five minutes for the accident to be reported.  Additionally, Behrendt testified that it appeared that Peters had only one hand on the steering wheel.  On the basis of the record, the evidence of Peters's use of his cellular telephone was not so remote as to require its exclusion.  We therefore conclude that this evidence was sufficiently relevant under the facts of this case that it should have been admitted.  The weight and value of this evidence should have been left to the jury.  See 
Klavine
, 29 Ill. App. 3d at 488.  We believe that the exclusion of the cellular telephone evidence likely affected the jury's allocation of fault between the defendants.  This error also requires that the cause be remanded for a new trial between the defendants on the issue of the allocation of fault.

IV.  ITEMIZED VERDICT FORMS

Weidner contends that the trial court erred in submitting itemized verdict forms allowing the jury to return a separate award for emotional distress.  The Hiscotts argue that, as direct victims, they are entitled to damages for the negligent infliction of emotional distress.  We will not disturb the trial court's determination of jury instructions absent a clear abuse of its discretion.  
Morrison v. Reckamp
, 294 Ill. App. 3d 1015, 1022 (1998).

The issue here is whether the Hiscotts are entitled to damages for the negligent infliction of emotional distress as the direct victims of an automobile accident.  The Hiscotts did not seek damages for emotional distress as "bystanders."  Illinois follows the "general negligence approach" for analyzing claims for the negligent infliction of emotional distress.  See 
Corgan v. Muehling
, 143 Ill. 2d 296, 306 (1991).  Under this approach, a direct victim must establish the existence of a duty by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the defendant's breach.  
Parks v. Kownacki
, 193 Ill. 2d 164, 181 (2000), citing 
Corgan
, 143 Ill. 2d at 306.

A direct victim need not establish that he or she suffered a physical injury or illness as a result of emotional distress.  
Corgan
, 143 Ill. 2d at 311-12.  In 
Corgan
, the supreme court stated that its reasoning for not requiring proof of physical injury to recover for the negligent infliction of emotional distress is fully compatible with its findings regarding the tort of intentional infliction of emotional distress under Illinois law, where a plaintiff need not allege physical injury to recover.  However, in order to prevent trivial or fraudulent claims, just as recovery for the intentional infliction of emotional distress is limited to emotional injury that is "serious" or "severe," recovery for negligently inflicted emotional distress should similarly be provided only for "serious" or "severe" emotional injury.  See, 
e.g.
, 
Doe v. Calumet City
, 161 Ill. 2d 374, 396 (1994) (a victim of an intentional infliction of emotional distress must establish that he or she actually suffered severe emotional distress, as this element is necessary to prevent fictitious claims).

In 
Corgan
, although the court stated that it "has not lost its faith in the ability of jurors to fairly determine what is, and is not, emotional distress" (
Corgan
, 143 Ill. 2d at 312), we do not read this statement to mean that all plaintiffs involved in personal injury actions may seek damages for negligently inflicted emotional distress without medically verifiable proof.  We make this conclusion in light of the court's observations that "expert witnesses such as psychiatrists, psychologists and social workers are fully capable of providing the jury with an analysis of a plaintiff's emotional injuries," and "the women and men of the mental health care field have made significant improvements in the diagnosis, description and treatment of emotional distress."  
Corgan
, 143 Ill. 2d at 311-12.  See also 
Majca v. Beekil
, 289 Ill. App. 3d 760, 763 (1997) (direct victim's manifestation of severe emotional distress caused by a doctor's negligence must be medically verifiable).

Furthermore, we are not convinced that the supreme court in 
Corgan
 intended that all plaintiffs in personal injury actions may state a cause of action for the negligent infliction of emotional distress separate from the pain and suffering accompanying physical injury.  We believe, as noted in Justice Miller's special concurrence (see 
Corgan
, 143 Ill. 2d at 315-16 (Miller, J., specially concurring)), that the holding in 
Corgan
 was limited to the circumstances of that case (
i.e.
, the nature of the doctor-patient relationship gives rise to a special duty on behalf of the doctor to refrain from activity that carries with it a foreseeable, and unreasonable, risk of causing emotional or mental harm to the patient (see 
Corgan
, 143 Ill. 2d at 307)).

In any event, even assuming that Illinois law would permit the Hiscotts to state a separate cause of action for the negligent infliction of emotional distress, after a careful examination of the record, we conclude that the Hiscotts failed to support their claim that they suffered severe emotional distress with expert medical proof.  We conclude, therefore, that the Hiscotts are not entitled to recover for the negligent infliction of emotional distress.  Accordingly, the trial court erred in submitting itemized verdict forms allowing the jury to return a separate award for emotional distress.

However, the Hiscotts did testify concerning the overall impact the accident has had on their lives.  This testimony more appropriately falls under the definition of "loss of a normal life" as set forth in Illinois Pattern Jury Instructions, Civil, No. 30.04.02 (2000), which provides:

"When I use the expression 'loss of a normal life', I mean the temporary or permanent diminished ability to enjoy life.  This includes a person's inability to pursue the pleasurable aspects of life."

The Illinois Supreme Court Committee on Jury Instructions in Civil Cases recommends the use of this instruction with the "loss of a normal life" option in Illinois Pattern Jury Instructions, Civil, No. 30.04.01 (2000).  We note that these "loss of a normal life" instructions were adopted by the Illinois Supreme Court Committee on Jury Instructions in Civil Cases approximately six months after the trial in this case.  The record indicates that the trial court refused to instruct the jury on "loss of a normal life" and instead issued the "disability" option in Illinois Pattern Jury Instructions, Civil, No. 30.04.01 (2000), believing that the case establishing the "loss of a normal life" instruction (
Smith v. City of Evanston
, 260 Ill. App. 3d 925 (1994)) was no longer good law.  However, this court has approved of instructing the jury on the "loss of a normal life" as an element of compensable damages.  See 
Zuder v. Gibson
, 288 Ill. App. 3d 329 (1997); see also 
Slavin v. Saltzman
, 268 Ill. App. 3d 392 (1994), overruled on other grounds in 
Zuder
, 288 Ill. App. 3d 329.  This court has also recognized that the phrase "disability" encompasses damages for "loss of a normal life."  
Zuder
, 288 Ill. App. 3d at 335.

Here, the trial court submitted itemized verdict forms that allowed the jury to return a separate award for disability for June Hiscott, but did not permit a separate award for disability for George Hiscott.  Based on the evidence in this case, the trial court should have instructed the jury on "loss of a normal life" rather than "disability" for each of the Hiscotts and omitted the instructions for "disability" and "emotional distress."  Because the itemized verdict forms did not accurately reflect Illinois law, we set aside the damages awards and remand this cause for a new trial on damages, consistent with this opinion.

V.  AMENDMENT OF PLEADINGS

Weidner argues that the trial court erred in permitting the Hiscotts to amend their pleadings after judgment to set forth new causes of action for the  negligent infliction of emotional distress.  Peters has not addressed this issue in his brief.

Section 2--616 of the Code of Civil Procedure provides that amendments changing the cause of action or adding new causes of action may be made on just and reasonable terms at any time before final judgment.  735 ILCS 5/2--616(a) (West 1998).  "A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs ***."  735 ILCS 5/2--616(c) (West 1998).  A trial court's ruling to allow or deny an amendment will not be reversed absent an abuse of discretion.  
Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.
, 186 Ill. 2d 419, 432 (1999).  In determining whether the trial court abused its discretion, we must consider four factors: (1) whether the proposed amendment will cure the defective pleading; (2) whether the proposed amendment would surprise or prejudice the opposing party; (3) whether the proposed amendment was timely filed; and (4) whether the moving party had previous opportunities to amend.  
Board of Directors
, 186 Ill. 2d at 432.

In this case, we conclude that the trial court abused its discretion in allowing the Hiscotts leave to amend their complaint.  We find that both defendants were prejudiced by the trial court's ruling because they had no opportunity to address the negligent infliction of emotional distress issue before or at trial.  We hold that the trial court erred in allowing the Hiscotts leave to amend their complaint by, in effect, adding new counts after judgment.  Furthermore, as noted above, we find that, under the evidence introduced at trial, the Hiscotts are not entitled to recover for the negligent infliction of emotional distress.

VI.  ALLOCATION OF FAULT

Weidner argues that the jury's allocation of fault between the defendants was against the manifest weight of the evidence.  Since we have already determined that this cause must be remanded for a new trial on damages and the allocation of fault, we need not address this issue.

VII.  FUTURE PAIN AND SUFFERING

Weidner argues that the jury's award for future pain and suffering to June Hiscott was against the manifest weight of the evidence.  Again, because we have determined that we must set aside the damages awards and remand this cause for a new trial on damages, we need not address this issue.

VIII.  CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed in part and reversed in part, and the cause is remanded for a new trial on only the issues of damages and allocation of fault between the defendants.

Affirmed in part and reversed in part; cause remanded.

BYRNE, J., concurs.

JUSTICE BOWMAN, dissenting in part:

I respectfully dissent in part.

First, I disagree with the majority's conclusions that the trial court abused its discretion in excluding evidence that defendant Peters was using his cellular phone immediately prior to the accident and that this error requires a new trial between defendants.

The majority determined that the circumstantial evidence that Peters was using his cellular phone was relevant because it went to the issue of what he was doing at the time of the accident.  Further, the majority concluded that the evidence, consisting of Peters's phone bill and testimony from a witness that Peters appeared to have only one hand on the steering wheel, was not so remote as to require its exclusion.  In my opinion, the majority has improperly substituted its judgment for that of the trial court and has failed to explain how the trial court clearly abused its discretion in refusing to admit the cellular phone evidence.

Weidner made an offer of proof that introduced Peters's cellular phone billing records.  The records showed that a one-minute call was made on Peters's phone between 1:14 and 1:15 p.m. on the date of the accident.  The sheriff's deputy who responded to the accident testified that the sheriff's department was notified of the accident at 1:20 p.m.  There was no testimony from any witness regarding what precise time the accident occurred.  Peters testified that he was not using his phone at the time of the accident. 

The trial court articulated the following reasons for excluding Peters's cellular phone records:

"The attorney for Mr. Peters makes a very valid point, and that is: We do not know the time of the accident.  I grant that 1:14 is a time before the police department received the call, which is 1:20.  Whether it was--whether it was at a time that he was on the road before the collision or it was a time after the collision, I don't know, and I think it would basically raise a question on which the jury would have to speculate, especially since there is no establishment of the time of the accident by the testimony in this case.  And I think it would be prejudicial.  As a matter of fact, my view is it would be reversible error for me to do it with there being no issue before the Court, because I cannot say on the basis of the testimony that is in this record that 1:14, the  time of the alleged phone call, that, in fact, this was prior to the accident."

The admission of evidence lies within the sound discretion of the trial court.  A reviewing court will not disturb the trial court's decision unless it 
clearly
 abused its discretion.   
Gill v. Foster
, 157 Ill. 2d 304, 312-13 (1993).  A reviewing court will find that a trial court abused its discretion only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.  
People v. Hall
, 195 Ill. 2d 1, 20 (2000).  Although the admissibility of relevant evidence is favored, "[e]ven relevant evidence may be excluded if its probative value is substantially outweighed by such factors as prejudice, confusion, or potential to mislead the jury."  
Gill
, 157 Ill. 2d at 314.

I would defer to the trial court's discretion in excluding the cellular phone evidence.   While the evidence may have met the standard for relevancy, the trial court determined that it would have led the jury into an improper area of speculation and thus resulted in unfair prejudice to Peters.   In light of the lack of evidence as to when the accident occurred, I fail to see how the trial court's ruling could be deemed arbitrary, fanciful, or completely unreasonable.  The majority acknowledges that the timing of the cellular phone call did not establish that it was made prior to or at the time of the accident but nonetheless imposes its interpretation of the evidence over that of the trial court, which had the opportunity to hear all of the evidence on the issue.  That the majority may not have reached the same conclusion as the trial court when confronted with the same evidence is not a sufficient reason for holding that the trial court abused its discretion.

Likewise, the evidence that Peters appeared to have only one hand on the steering wheel at the time of the accident does not make the cellular phone evidence any less speculative or prejudicial.  The witness who claimed to have had a clear view of Peters did not testify that he saw Peters using his phone,  and there are a multitude of reasons why someone might be driving with only one hand.  The majority's conclusion that the evidence is admissible will allow the jury upon retrial to speculate as to whether Peters was using his cellular phone and, perhaps, attribute fault to Peters based on improper speculation.  Accordingly, I would affirm the trial court's exclusion of the evidence of Peters's use of a cell phone.

I also disagree with the majority's decision to set aside the damages award to plaintiffs for their emotional distress.  I am particularly disturbed by the majority's determination that plaintiffs were not entitled to request damages for emotional distress on the verdict form because they did not present an expert's testimony supporting their claim of emotional distress.  None of the parties raised this argument before the trial court or this court.  Furthermore, the majority has not cited a single case that has held that an expert's testimony is required for plaintiffs who have been directly injured in an accident to obtain damages for emotional distress.  Consequently, the majority has, 
sua sponte
 and without any supporting authority, created a new requirement for plaintiffs who seek damages for emotional distress as a result of a defendant's negligence.

Existing case law does not support the majority's holding.  Generally speaking, an expert witness's testimony is required only where the matter is 
clearly
 outside the jury's common knowledge and experience.  
Suich v. H&B Printing Machinery, Inc.
, 185 Ill. App. 3d 863 (1989).  For example, an expert's testimony is usually required in a medical malpractice action to establish that a defendant physician breached the standard of care and that the breach proximately caused the plaintiff's injuries.  This is not a case that required the jury to evaluate the standard of care applicable to a medical professional and its causal relation to a plaintiff's injuries.  Moreover, the majority has failed to explain why the determination of whether plaintiffs suffered compensable emotional distress was clearly outside the jury's knowledge and experience.

The cases upon which the majority relies do not address whether an expert's testimony is required to prove emotional distress when a plaintiff has been physically injured by the defendant's negligence.  The case of 
Corgan v. Muehling
, 143 Ill. 2d 296 (1991), involved a plaintiff who sued her psychologist for malpractice.  The court determined that, as a direct victim of the defendant's malpractice, the plaintiff had a viable action for the negligent infliction of emotional distress.  
Corgan
, 143 Ill. 2d at 308.  The court then went on to hold that the plaintiff was not required to allege physical injury or illness in order to recover for the negligent infliction of emotional distress.  
Corgan
, 143 Ill. 2d at 309.  In explaining why an allegation of physical injury is not required in such cases, the court stated:

"Clearly, when a primary response is coupled with a secondary one (which would include physical symptoms), damages can be established with a sense of objectivity.  However, lack of precision is not a justifiable reason to preclude recovery, as expert witnesses such as psychiatrists, psychologists and social workers are fully capable of providing a jury with an analysis of a plaintiff's emotional injuries.  The emotional distress of the primary response is no less real than the distress that is coupled with the physical manifestation of the secondary response and should not be distinguishable at law."  
Corgan
, 143 Ill. 2d at 311.

The court further noted that allegations of physical injury were not required in cases involving the intentional infliction of emotional distress.  
Corgan
, 143 Ill. 2d at 311, citing 
Knierim v. Izzo
, 22 Ill. 2d 73 (1961).  In 
Knierim
, the court stated that "the men of science" could assist in determining whether a plaintiff suffered emotional distress even in the absence of physical symptoms and that " 'jurors from their own experience will be able to determine whether *** conduct results in severe emotional disturbance.' "  
Corgan
, 143 Ill. 2d at 312, quoting 
Knierim
, 22 Ill. 2d at 85.  The 
Corgan
 court acknowledged that "this court has not lost its fai
th in the ability of jurors to fairly determine what is, and is not, emotional distress."   
Corgan
, 143 Ill. 2d at 312.  It added that "the women and men of the mental health care field have made significant improvements in the diagnosis, description and treatment of emotional distress."  
Corgan
, 143 Ill. 2d at 312.  Nowhere, however, does the court hold that an expert's medical testimony is required, even in cases where the plaintiff did not suffer physical injury.  Consequently, the majority's reliance on 
Corgan
 is misplaced.

The majority acknowledges the court's statement in 
Corgan
 that jurors are able to fairly evaluate allegations of emotional distress but dismisses it by saying that the statement does not mean that all plaintiffs in personal injury actions may seek damages for emotional distress without medically verifiable proof.  The majority has no problem, however, with taking the court's statement that an expert's testimony 
could
 be helpful in determining whether a plaintiff who did not suffer physical injury has suffered emotional distress and expanding that statement into a general rule that applies to plaintiffs who have sustained serious injuries as a direct result of a defendant's negligence.  In my view, the majority's reasoning is illogical and the end result constitutes an improper expansion of 
Corgan
. 

I find more persuasive the reasoning of the court in 
Clark v. Owens-Brockway Glass Container, Inc.
, 297 Ill. App. 3d 694 (1998).  In that case, the court held that the medical testimony of an expert was not required to support the damages awarded to the plaintiff for emotional distress.  The plaintiff in 
Clark
 alleged that she suffered emotional distress as a result of her former employer's retaliatory discharge. In rejecting the defendant's argument that the evidence regarding emotional distress was insufficient due to the lack of an expert's medical testimony, the court concluded that the plaintiff's own testimony was sufficient to support the award.  The court noted as follows:

"The existence or nonexistence of medical testimony goes to the weight of the evidence but does not prevent this issue [of emotional distress] from being submitted to the jury.  
Corgan v. Muehling
, 143 Ill. 2d 296, 312, 574 N.E.2d 602, 609 (1991).  Expert *** testimony is not needed to prove things that are common knowledge.  Any average, reasonable person can readily evaluate a claim of emotional distress alleged to result from a discharge and loss of earnings.  After hearing Clark's testimony that her utilities were turned off and that she was forced to seek community help to feed her family, a jury could reasonably conclude that she suffered emotional distress."  
Clark
, 297 Ill. App. 3d at 701.

Similarly, in the case before us, the jury did not need an expert to help it decide whether plaintiffs who were seriously injured in a car accident suffered emotional distress as a result of the accident.  Any reasonable person could make that determination.  Defendants were free to point out the lack of corroborating medical evidence, and it was the jury's job to weigh all of the evidence.  There certainly was sufficient testimony from plaintiffs for the jury to find that they suffered emotional distress as a result of the accident and to award damages accordingly.  Therefore, I would allow the damages award for emotional distress to stand and would not require plaintiffs to retry the issue of damages.

Last, I disagree with the majority's attempt to remedy the reversal of the emotional distress award by providing that upon retrial plaintiffs can seek damages for "loss of a normal life" instead of damages for emotional distress.  Pursuant to the Illinois Pattern Jury Instructions, plaintiffs are entitled to damages for the loss of a normal life and emotional distress when the evidence so warrants and plaintiffs have a viable claim for emotional distress damages.  Illinois Pattern Jury Instructions, Civil, Nos. 30.04.01, 30.05.01 (2000).  The majority has cited no authority for its conclusion that damages for the loss of a normal life encompass emotional distress.  Accordingly, in addition to disagreeing with the remand of plaintiffs' case for a new trial on damages, I disagree with the majority's holding limiting plaintiffs to damages for the loss  of a normal life instead of the loss of a normal life and emotional distress.