OPINION OF THE COURT
Leon Ruchelsman, J.
The plaintiff has moved seeking to preclude the introduction of any evidence, in any manner, of Shirley Miller’s cell phone records. The defendants have opposed the motion. Papers were submitted by the parties and arguments held. After reviewing all the arguments this court now makes the following determination.
On December 19, 2008 the plaintiff Shirley Miller was hit by a truck driven by defendant Henry Lewis at the intersection of Ninth Avenue and West 48th Street in New York County. The precise time of the accident has not been determined; however, the earliest 911 call was placed by a bystander, Heather Moosnick, that was received by 911 at 11:08 a.m. The plaintiff received a telephone call at 11:01:10 a.m. and such call lasted until 11:06:33 a.m. Since it cannot be determined when the Moosnick call was first made, since the phone records state merely “11:07,” even assuming the call was made at precisely 11:07:00 a.m., the earliest possible time, and not received by 911 until 11:08 a.m., there is still a gap of 27 seconds when the plaintiff had already finished her telephone call. The plaintiff argues that therefore there is only speculation that the plaintiff *492 was on her cell phone at the time of the accident and no evidence of such cell phone use should be introduced at trial. The defendants argue that there is no question the plaintiff was on her cell phone sometime before the accident and thus evidence, both direct and circumstantial, should be introduced to establish that the plaintiff was still on her phone when struck. The use of a cell phone can be introduced to argue inattentiveness or the failure to observe the traffic conditions on the part of the plaintiff. Thus, defendants maintain, significant questions of comparative negligence should be presented to the jury.
Conclusions of Law
There is no direct evidence that plaintiff was on her cell phone and that the call ceased as a result of the accident. The defendants argue the brief time gap between the end of her call and the first 911 call “is conclusive evidence that she was on the phone when she was struck, and that the call disconnected thereafter, not because she hung up, but undoubtedly because the party on the other end . . . hung up after no longer hearing Ms. Miller on the phone” (see defendants’ mem in opposition at 6). However, that evidence, notably the gap in time, by its very nature, is indirect and inferential, resulting from estimates and projections that really focus upon how soon after the accident the first 911 call was made. The 911 call was made within moments of the accident; the precise moment of the accident, however, remains unknown. Thus, there can be no direct evidence to “compel” the conclusion the plaintiff was on her cell phone.
In addition, there can be no presumption that since the plaintiff was on the phone just prior to the collision she remained on the phone thereafter. The law does recognize a presumption that facts in existence at a specific time continue until evidence is presented to the contrary. Thus, in Wilkins v Earle (44 NY 172 [1870]), the Court stated “[t]here is a legal presumption of continuance. A partnership once established is presumed to continue. Life is presumed to exist. Possession is presumed to continue. The fact that a man was a gambler twenty months since, justifies the presumption that he continues to be one” (id. at 192). However, those principles are inapplicable to demand the inference that the plaintiff remained on the phone until the accident. In Cummins v County of Onondaga (84 NY2d 322 [1994]) the Court of Appeals was asked to apply the presumption to require the inference that a woman *493 driving a vehicle remained alive following an accident to entitle the driver to an award of conscious pain and suffering. The Court declined to consider the request on the grounds it had not been preserved for appellate review. The Court then stated
“that no implications are intended and no inferences should be drawn as to how this Court would resolve the merits, pros and cons, of a proposed extension and application of the so-called presumption of continuance into this conscious pain and suffering area of the law. That would have to be weighed carefully in an appropriate case, because availability and application of the rule would affect long-standing and delicate burdens of proof and major risk and damage policy allocations” (id. at 326).
An extension of the presumption in this case which concerns voluntary conduct, which can cease at any moment, such as the use of a cell phone could significantly alter the proof necessary to establish negligence. To be sure, there are cases that hold that a presumption exists that a driver of a vehicle remains the driver and the passenger remains the passenger even where an accident is unwitnessed and the passenger is killed (see Ohio Bell Tel. Co. v Lung, 129 Ohio St 505, 196 NE 371 [1935]); however, the particular facts sought to be inferred in this case are different in kind and significance. Indeed, the application of the presumption to establish as direct evidence that plaintiff remained on her cell phone until the accident would be a stark departure from the evidentiary standards of this state and will not be permitted.
Therefore, as a matter of law no direct evidence has been presented whether the plaintiff was on her cell phone when the accident occurred. Certainly, there can be no conclusive determination of the plaintiffs comparative negligence as suggested by the defendants. Rather, the evidence, if permitted at all, will require the inference that the plaintiff remained on the phone until the moment of impact. The plaintiff argues the gap in time is too great to permit even an inference of such conduct. Those arguments will now be addressed.
Circumstantial evidence is indirect evidence sought to be introduced to create an inference that a certain fact exists (Schneider v Kings Hwy. Hosp. Ctr., 67 NY2d 743 [1986]). Turning to the inferences themselves, the plaintiff seeks to preclude the cell phone records on the grounds there is no evidence the plaintiff was utilizing her cell phone at the time of the accident; thus, their introduction is mere speculation. Plaintiff further *494 argues that since they are speculative they cannot support a claim of comparative negligence and should be excluded completely. As noted, defendants oppose the motion arguing, alternatively, that certainly inferences may be made whether the plaintiff was on her cell phone and her cell phone records should be admitted for that purpose.
There are no New York cases which directly address the admissibility of cell phone records to circumstantially prove cell phone use and hence inattentiveness and possible negligence. However, the matter has been addressed in other jurisdictions concerning the cell phone use of drivers. While in New York it is prohibited for a driver to use a cell phone (see Vehicle and Traffic Law § 1225-c) and no such statutory prohibition applies to pedestrians, the analysis will nevertheless prove useful.
In Scianni v Suriano (2007 WL 506206, 2007 NJ Super Unpub LEXIS 1070 [App Div, Feb. 20, 2007, No. A-4415-05T5]) the evidence showed an accident could have occurred as early as 2:40 p.m. The cell phone records of the driver revealed the driver had been on her cell phone for a two-minute call beginning at 2:37 p.m. and ending at 2:39 p.m. The court permitted the cell phone records into evidence holding that “the close proximity in time-as little as one minute-between the end of the plaintiffs third cell phone call and the estimated time of impact renders the billing record probative under the liberal definition of relevancy” (2007 WL 506206, *3, 2007 NJ Super Unpub LEXIS 1070, *8). The court referred to another case, Hiscott v Peters (324 Ill App 3d 114, 754 NE2d 839 [2d Dist 2001], overruled on other grounds by Thornton v Garcini, 237 Ill 2d 100, 928 NE2d 804 [2009]), that reached a similar result. In Hiscott, the accident was reported at 1:20 p.m. and the cell phone records of the driver Peters revealed he was on the phone between 1:14 and 1:15 p.m. The court permitted the introduction of the phone records finding that “[w]e are mindful that all clocks are not synchronized, and that it may have taken five minutes for the accident to be reported” (324 Ill App 3d at 125, 754 NE2d at 849). The court further considered evidence of a witness who testified that it appeared the driver had only one hand on the steering wheel; nevertheless, the court concluded that “the evidence of Peters’s use of his cellular telephone was not so remote as to require its exclusion” (id.).
Of course not eveiy use of a cell phone could reasonably infer negligence. Thus, in McCuish v Jaffe (2009 WL 3050900, 2009 Mich App LEXIS 1952 [Sept. 24, 2009, No. 286807]), the court *495 excluded any evidence of the driver’s cell phone records as speculative. In that case the accident occurred during a 45-minute window between 3:30 p.m. and 4:15 p.m.
“Billing records indicated that she had used her phone several times between 3:49 p.m. and 4:39 p.m., but absent any evidence as to the exact time of the accident, or a witness’s observation that she was on her phone at the time, the jury could only speculate that defendant was in fact on her phone when the accident occurred” (2009 WL 3050900, *2, 2009 Mich App LEXIS 1952, *6-7).
Again, in Miller v American Greetings Corp. (161 Cal App 4th 1055, 74 Cal Rptr 3d 776 [2d Dist 2008]) the court excluded the cell phone records of the driver Magdaleno who hit Miller inflicting significant injuries. The evidence showed the accident occurred at 9:35 a.m. and “911 logs show emergency calls started coming in from the scene of the accident at 9:35:52 a.m.” yet Magdalene’s cell phone records showed he used the phone for one minute at 9:26 a.m. to call his crew chief Elizalde (161 Cal App 4th at 1062, 74 Cal Rptr 3d at 781-782). The court noted that
“[i]t beggars belief that every bystander and passerby would have waited more than eight minutes after appellants claim Magdaleno hit Miller at 9:26 a.m. — the time he was talking to Elizalde — to make the first 911 call at 9:35:52 a.m., at which time the dam burst and ‘numerous 911’ reports flooded in” (161 Cal App 4th at 1062, 74 Cal Rptr 3d at 782).
Thus, the court excluded the cell phone records since they were too remote in time to the accident to establish he had been talking on the phone during the accident and was therefore involved in the scope of his employment for liability purposes.
These cases make plain that cell phone records which reveal calls made within close proximity to the accident may be introduced to demonstrate use and then to further argue negligence. The fact the above-cited cases all refer to drivers where the use of a cell phone exhibits a heightened degree of negligence, such issue concerns the weight of the evidence not its admissibility.
Plaintiff argues that if the cell phone records are introduced they cannot be rebutted since due to the severity of her injuries the plaintiff cannot testify concerning the events leading up to the accident. As the plaintiff argues,
*496 “since Shirley cannot defend herself against defendants’ accusations that she was on her cell phone and therefore distracted, it is unfair to allow defendants to suggest that she was on her cell phone in the absence of clear proof, which would come from Shirley Miller herself admitting that she was on the phone at the time, or testimony from a witness seeing her on the phone at the time of the accident” (see plaintiffs reply mem of law at 10).
While it is true that Ms. Miller cannot herself rebut the inference of cell phone use with direct testimony, the plaintiff can rebut the inference in other ways. For example, the plaintiff has submitted the first trial transcript of four witnesses, namely Henry Lewis, Heather Moosnick, Diane Rodriguez and Guillermo Garcia who all testified that they did not observe a cell phone at the scene of the accident. In addition, evidence of the photographs taken by Sergeant Donald Schneider were introduced and none of them depict a cell phone. Furthermore, plaintiffs counsel has presented a time line of the cell phone use and subsequent 911 call which does not compel an inference of cell phone use at all. Thus, there is considerable evidence available to sufficiently rebut the inference of cell phone use.
Lastly, plaintiff argues that Carpio v Leahy Mech. Corp. (30 AD3d 554 [2d Dept 2006]) is pointed New York precedent that cell phone use at the time of an accident is speculative and hence inadmissible. In that case the Court succinctly stated that “the defendants’ conclusory assertions that the plaintiff may have been using her cell phone and may have had time to take evasive action were completely speculative and undermined by evidence in the record” (id. at 555). The plaintiff has included the brief for the defendants in Carpió that was submitted to the Appellate Division wherein paragraph 17 argues the fact that the accident occurred at 9:11 a.m. and that the plaintiff had been on her phone for an eight-minute phone call beginning at 9:08 a.m. (see evidence submitted within plaintiffs reply mem of law, exhibit N). Thus, the defendants argued there were questions of fact whether the plaintiff was on her cell phone at the time of the accident. Nevertheless, the Appellate Division rejected that argument ruling that such evidence was “completely speculative” (Carpio, 30 AD3d at 555). Miller argues this supports the arguments presented here that the evidence of plaintiffs cell phone use is speculative and irrelevant. However, the “Statement of Facts” submitted within the very brief presented by the plaintiff here in paragraph 1 states that “some *497 where between 8:55 AM and 9:11 AM a collision occurred” completely undermining the argument presented later in the same brief that “the accident occurred at 9:11 AM” (evidence submitted within plaintiffs reply mem of law, exhibit N). While cell phone use could have been relevant in any event, perhaps the sheer inconsistency of the arguments prompted the Appellate Division to reject it so thoroughly. In any event, that certainly cannot support the argument that the cell phone records in this case are deemed speculative and irrelevant as a matter of law.
Therefore, based on the foregoing, the defendants will be permitted to present evidence of the plaintiffs cell phone records and then to further argue that such cell phone use might have led to inattentive or distracted behavior to the extent contributory negligence was possible.
The scope and parameters of the introduction of that evidence will now be addressed. Any questioning or comment regarding texting or emailing while walking will not be permitted. Those are factually distinguishable from this case and consequently irrelevant. Equally impermissible will be any questioning of any other witness about the frequency or habits of his or her conduct while walking and talking on a cell phone. It is well settled that evidence of prior similar acts of negligent conduct may generally not be introduced to establish negligence in the case at trial (Bowers v Johnson, 26 AD2d 552 [2d Dept 1966]). In this case, the defendants do not seek to question the plaintiff about any prior conduct since she is unable to testify in that regard; rather, the defendants seek to question other witnesses about their experiences with the dangers of cell phone use while walking in the street, observing traffic and remaining attentive. The stated objective of such questioning is to permit the inference that walking and talking on a cell phone is dangerous and can constitute negligence. While that may be true the questioning is improper. If the participant herself may not be questioned concerning her past conduct then surely other individuals may not be questioned about their prior conduct or the conduct of society at large. The case of Holroyd v Gray Taxi Co. (39 Cal App 693, 179 P 709 [1st Dist 1919]) is illustrative. In that case a pedestrian was hit by a taxi. At the trial the driver of the taxi was asked about “the habits and customs of people in approaching an automobile” (39 Cal App at 694, 179 P at 709). The trial court refused to permit the question to be answered. On appeal that determination was upheld explaining *498 that the purpose of the question was to elicit the response that pedestrians generally jump away from a moving vehicle supporting the defendant’s theory that the pedestrian was also negligent. The court concluded that question was improper. The court stated, “[wjhat others may have done when confronted with a sudden danger could not possibly establish a custom by which the plaintiff in this case would have been bound” (39 Cal App at 695, 179 P at 710). Likewise, what other individuals have observed or have experienced themselves regarding the dangers of cell phone use and attentiveness in the street has no relevancy upon Shirley Miller’s conduct on the day of the accident and all such questioning will be excluded.
This does not prohibit the defendants from seeking to introduce evidence that inattentiveness in any manner including cell phone use can constitute negligence. Although that truism can hardly be disputed, the defendants may still present general evidence of those dangers.
Concerning the voir dire of prospective jurors and the mention of cell phone use on the part of the plaintiff, the jurors may only be informed that the defendants will present, if they choose, circumstantial evidence of cell phone use on the part of the plaintiff. They may then be questioned whether they could conclude the plaintiff was negligent based only upon circumstantial evidence. Thus, they may be asked whether they could agree with the theory of the case as presented by the defendants despite the lack of any direct evidence. No further inquiries concerning the cell phone use of individual prospective jurors will be permitted.