NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190914-U

NO. 4-19-0914

IN THE APPELLATE COURT

FILED
December 16, 2021
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| MARQUIS L. LOWERY, | ) | No. 18CF1143 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Robert Charles Bollinger, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Defendant forfeited his claim he was denied a fair trial based on assertions that one of the State's expert witnesses was allowed to opine on a matter beyond the scope of his expertise and his expert opinion lacked an adequate foundation.

(2) The trial court did not abuse its discretion in sentencing defendant to 13 years' imprisonment.

¶ 2    Following a jury trial, defendant, Marquis L. Lowery, was convicted of unlawful delivery of a controlled substance and sentenced to 13 years' imprisonment. Defendant appeals, arguing (1) he was denied a fair trial where one of the State's expert witnesses was allowed to provide opinion testimony outside his area of expertise and which lacked an adequate foundation and (2) his 13-year prison sentence is excessive. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4                                    A. The Charge

¶ 5            In August 2018, the State charged defendant by information with unlawful

delivery of a controlled substance (see 720 ILCS 570/401(c)(1) (West 2016)), alleging that on

March 10, 2016, defendant knowingly and unlawfully delivered more than 1 but less than 15

grams of a substance containing heroin to Michael Dandy.

¶ 6                                    B. Jury Trial

¶ 7            Defendant's jury trial was conducted on June 17 and 18, 2019.

¶ 8                                 1. *The State's Evidence*

¶ 9            The State called four witnesses and introduced several video recordings and a

recording of a phone conversation between defendant and Dandy.

¶ 10                            a. Detective Lonnie Lewellyn

¶ 11           Lonnie Lewellyn, a detective with the Decatur Police Department, testified he

was working on an investigation involving defendant in early 2016. As part of the investigation,

Lewellyn worked closely with Michael Dandy, a confidential informant. According to Lewellyn,

Dandy was arrested for possessing heroin in January 2016. Dandy agreed to assist Lewellyn with

three investigations in exchange for the dismissal of the possession charge against him.

¶ 12           Detective Lewellyn testified that on March 10, 2016, he met with Dandy to

conduct a "wire buy" of heroin from defendant. Dandy called defendant to purchase heroin, and

Lewellyn recorded the phone call. After the phone call, Lewellyn searched Dandy for "narcotics

or currency" and found neither. Lewellyn then gave Dandy a video recording device and $100,

and Dandy drove his vehicle to the designated meeting location. Lewellyn testified he and other

detectives followed Dandy to the meeting location, "keeping him in our site [*sic*] the whole time

to make sure that he doesn't stop or meet with any other people ***." Lewellyn observed Dandy

meet with defendant briefly at the designated location. Lewellyn testified that after meeting with defendant, Dandy then drove straight to a predetermined location to meet with the detectives. Lewellyn further testified that Dandy was under constant surveillance from the time he left to meet with defendant until the time he returned to the detectives. Upon meeting the detectives, Dandy "turned over a small bag of a grayish[-]brown substance, which he claimed that he had purchased from [defendant]." Lewellyn then searched Dandy and his vehicle for a second time, placed the substance Dandy gave him in a sealed evidence bag, and sent the evidence to the crime lab for testing.

¶ 13       On cross-examination, Lewellyn acknowledged that he wrote a report in regard to the controlled buy but failed to indicate in the report that he had searched Dandy's vehicle either before or after Dandy met with defendant. However, Lewellyn went on to state that "just because it's not in my report doesn't mean it didn't happen. I searched the vehicle."

¶ 14                           b. Angela Nealand

¶ 15       Angela Nealand, a "forensic scientist specializing in the area of drug chemistry" with the Illinois State Police Forensic Science Laboratory, testified she received a sealed evidence envelope in the instant case on May 12, 2016. Nealand weighed the substance and reported the weight as 1.1 grams. Nealand then conducted three separate tests on the substance; all of which were "positive for the presence of heroin." Nealand testified that in her expert opinion, the "1.1 grams of powder contained heroin." On cross-examination, she acknowledged that although the bag containing the substance may have met the lab's fingerprint-testing criteria, no such test was conducted.

¶ 16                           c. Michael Dandy

¶ 17        Michael Dandy testified that he was arrested in January 2016 for possessing heroin. To avoid being charged with possession of heroin, Dandy agreed to assist the Decatur Police Department with three investigations, one of which involved defendant. On March 10, 2016, Dandy met with Detective Lewellyn for the purpose of buying heroin from defendant. Dandy called defendant, and the recorded phone call was played to the jury. On the call, Dandy informs defendant he wants "a couple of 'em." Defendant responds that "all I've got left is probably one." Dandy testified that "one" referred to one gram of heroin. After the phone call, Dandy got into his vehicle with the recording equipment and drove to defendant's location.

¶ 18        The video recording was introduced into evidence and played to the jury. In the video, Dandy is seen exiting Lewellyn's vehicle and entering his own vehicle. Dandy places the video recording device on his lap, points it at the passenger seat, and drives for approximately ten minutes before stopping. Defendant then can be seen opening the passenger door and handing Dandy a small bag. Defendant is heard telling Dandy "this is only a gram." The video then depicts Dandy handing defendant $100 and subsequently driving away. Towards the end of the video, the recording device appears to fall off Dandy's lap, and only the floorboard of the vehicle is visible. The video concludes when Dandy meets up with Lewellyn again. The State also introduced still photos of the transaction between Dandy and defendant and published them to the jury. Dandy testified the substance that was depicted in the video and photos was the same substance he gave to Detective Lewellyn.

¶ 19        The State also introduced a video defendant posted to Facebook in 2018 shortly after being charged in the instant case. In the video, defendant calls Dandy a "rat" and says he wants the public to know that Dandy works with the police. In the video, defendant zooms in on the portion of the information filed against him that identifies Dandy by name.

¶ 20    On cross-examination, Dandy testified that Lewellyn did not search him or his vehicle before he drove to meet defendant. Defense counsel asked Dandy if anyone from the Decatur Police Department told him that he would be charged with possession if he "didn't produce some results on these three investigations," and Dandy answered that he did not recall anyone telling him that.

¶ 21                              d. Detective Chad Ramey

¶ 22    Chad Ramey, a detective with the Decatur Police Department, was permitted to testify as an expert in "drug and narcotic distribution." Ramey testified he had listened to the recording of the phone call between defendant and Dandy, and, in his opinion, they were discussing the sale of heroin. Ramey provided the following relevant testimony:

> "Q. [S]o based on your training and expertise, did you have an opinion to a reasonable degree of certainty in your field as to whether or not a delivery of heroin of about a gram had occurred in that video you watched?
>
> A. Yes. I—I believe from my—my observations, my training and experience that that heroin was actually delivered to that source and that—that actual amount was consistent with what the—what the phone call showed.
>
> Q. And is there anything else that you base your opinion on besides what you had just told us?
>
> A. No. Just observations that I saw actually in the video, the—those photographs as well as, you know, the phone call."

On cross-examination, Ramey acknowledged he was not present for the transaction and he did not have any "forensic training."

¶ 23                              2. *Defendant's Evidence*

¶ 24        Defendant testified on his own behalf. According to defendant, Dandy began calling him asking for heroin in January 2016, shortly after Dandy was released from prison. Defendant estimated Dandy had called him approximately 15 times between January and March 2016. Defendant testified he repeatedly told Dandy he "didn't know anything about it and [he] didn't possess anything like that." However, defendant further testified, "[Dandy] was persistent and I—I needed some money that day so I told him, yeah, I could get him some. I put some Comet in a bag, gave it to him, and it ended up coming to all of this."

¶ 25                                    3. *Finding of Guilt*

¶ 26        Following less than an hour of deliberation, the jury found defendant guilty beyond a reasonable doubt.

¶ 27                                    C. Sentencing

¶ 28        On July 31, 2019, the trial court conducted a sentencing hearing. At the outset of the hearing, the parties agreed defendant faced Class X sentencing due to two prior Class 1 felony convictions: (1) possession of 1 to 15 grams of cocaine with intent to deliver in Macon County case No. 02-CF-1127 and (2) possession of between 15 and 100 grams of cocaine in Macon County case No. 11-CF-1201. According to the presentence investigation report, in addition to the 2 felonies noted above, defendant had 2 other felony convictions and 14 misdemeanor offenses, 2 of which were drug offenses.

¶ 29        The State presented in aggravation the testimony of Detective Jason Hesse and Detective Chad Ramey. Hesse testified that on February 26, 2016, he observed defendant get into the back seat of a vehicle parked in a public parking lot. The vehicle was subsequently searched, and officers located a digital scale and 4.6 grams of heroin, both of which were within reach of defendant. Detective Ramey opined the relevant conduct of the occupants of the vehicle

was consistent with a drug transaction. In mitigation, defendant presented 15 letters written by his family and friends. The letters describe defendant as a role model in the community and a loving and involved parent who supports his family.

¶ 30        The State requested the trial court impose a 16-year prison sentence. The State highlighted the fact it had presented evidence tending to show defendant committed a separate heroin offense shortly before being charged in the instant case and the trial evidence— specifically, the Facebook video—demonstrated defendant attempted to intimidate Dandy. The State argued in aggravation that a longer sentence was necessary to deter others, defendant had a significant criminal history, and he was likely to reoffend. On the other hand, defendant requested a sentence of imprisonment "on the low end of the sentencing guidelines." Defendant mainly pointed to the numerous letters introduced at the sentencing hearing demonstrating "there's more to [him] than just being a drug dealer ***."

¶ 31        In imposing a 13-year prison sentence, the trial court provided the following reasoning:

> "THE COURT: Here, in terms of the nature of this offense, the quantity of the drug in question *** was on the low range for this type of an offense ***. The Court has considered that in terms of the quantity issue.
>
> ***
>
> It stood out particularly to the Court that the—this particular crime did not involve any particular physical act of violence toward anyone, but it did involve [a] transaction involving [an] illegal substance that would be harmful—or could be harmful to those who are addicted to those substances in the community.

The Court does agree with the [State], there is a necessity of deterring others in the community from committing *** these types of acts, from profiting from illegal drug sales at the expense of the community and other users, and a message should be sent that these types of crimes will not be tolerated in the community ***.

*** 

The Court is aware the defendant has multiple children. Does have family, friends who obviously care about him and have written thoughtful letters on his behalf attesting to his character, to his value in the community, and to his family. The Court has considered those. Gives weight to those.

The Court does tend to agree with the [State]; there is a likelihood the defendant will re-offend, given his criminal history, his multiple convictions involving illegal drug possession, delivery, some dating back more than a decade. Two prior Department of Corrections sentences, which did not deter the defendant here from committing additional conduct to which he has now been convicted."

¶ 32 Defendant filed a motion to reconsider sentence, which the trial court denied.

¶ 33 This appeal followed.

¶ 34                                  II. ANALYSIS

¶ 35 Defendant argues (1) he was denied a fair trial where one of the State's expert witnesses was allowed to provide opinion testimony outside of his expertise and which lacked an adequate foundation and (2) his 13-year prison sentence is excessive.

¶ 36                        A. Expert Witness Opinion Testimony

¶ 37 Defendant argues Detective Ramey's opinion testimony regarding the identity of the substance defendant gave Dandy deprived him of a fair trial because Ramey was qualified only as an expert in drug distribution, not drug identification or chemistry, and, moreover, his unqualified expert opinion lacked an adequate foundation. Defendant acknowledges he forfeited this argument by failing to object at trial and raise it in a posttrial motion. See, *e.g.*, *Thornton v. Garcini*, 237 Ill. 2d 100, 106, 928 N.E.2d 804, 808 (2010) ("A defendant must object to an error at trial and include it in a written posttrial motion to preserve an issue on appeal."). Nonetheless, he maintains we may excuse his forfeiture and consider his argument under the first prong of the plain-error doctrine. Alternatively, defendant argues counsel was ineffective for failing to object.

¶ 38                                    1. *Plain Error*

¶ 39 Defendant contends plain-error review is warranted because the trial court's failure to exclude Ramey's opinion testimony constituted clear or obvious error, and the error prejudiced him given the closely-balanced nature of the evidence presented at trial. Defendant argues that the sole issue before the jury was whether defendant gave Dandy heroin or Comet, and, with respect to this issue, the jurors were presented with the "quintessential credibility contest between two plausible theories of events that lacked objective corroboration."

¶ 40 The plain-error doctrine allows reviewing courts to excuse a forfeited claim when, in relevant part, "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant ***." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410 (2007). The defendant has the burden of persuasion under both prongs of the plain-error doctrine. *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010). Therefore, if he fails to persuade the evidence was closely balanced, we must honor the procedural default. *Id.* "The ultimate question of whether a forfeited

claim is reviewable as plain error is a question of law that is reviewed *de novo*." *People v. Johnson*, 238 Ill. 2d 478, 485, 939 N.E.2d 475, 480 (2010).

¶ 41     To determine whether the evidence was closely balanced, we "must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53, 89 N.E.3d 675. This requires "an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Id.* Our supreme court has held evidence is close when a fact-finder is left to resolve a "contest of credibility." (Internal quotation marks omitted.) *Id.* ¶ 63. A credibility contest occurs when both the State and defense present credible versions of events and neither version is corroborated or contradicted by extrinsic evidence. See *id.*; *People v. Naylor*, 229 Ill. 2d 584, 607, 893 N.E.2d 653, 668 (2008) ("Given these opposing versions of events, and the fact that no extrinsic evidence was presented to corroborate or contradict either version, the trial court's finding of guilty necessarily involved the court's assessment of the credibility of the two officers against that of defendant.").

¶ 42     Here, even if we were to assume defendant demonstrated a clear or obvious error occurred, we would nonetheless reject his plain-error argument, as he fails to establish that the evidence was closely balanced. Defendant's version of events was that he gave Dandy a bag containing Comet, whereas the State's version was that defendant gave Dandy heroin. As noted above, defendant asserts both versions were plausible, and neither was corroborated by additional evidence. We disagree. The State's version of events was corroborated by (1) the recorded phone call between Dandy and defendant, (2) Angela Nealand's expert testimony, and (3) the video defendant posted to Facebook.

¶ 43    First, the State introduced a recording of a phone call in which Dandy asked defendant for a "couple of 'em." Both Dandy and Detective Ramey testified that this referred to two grams of heroin, not Comet. Second, Angela Nealand, an expert in drug chemistry, testified she conducted three separate tests on the relevant substance and, in her expert opinion, the substance contained heroin. Although defendant argues this evidence is not corroborative because he testified Dandy switched out the substance, defendant's argument essentially stands for the proposition that the evidence is close where the State failed to definitively prove Nealand tested the substance seen in the video versus the substance he claims Dandy switched it with. However, the standard is corroboration, not definitive proof, and we reject defendant's attempt to assert otherwise. See *Sebby*, 2017 IL 119445, ¶ 63. Third, in defendant's Facebook video, he repeatedly calls Dandy a "rat" for working with the police; however, defendant never claims in the video that Dandy framed him or switched out the substance. Finally, the jury heard defendant's version and, given the jurors deliberated for less than an hour, we cannot say the failure to exclude Ramey's opinion testimony likely tipped the scales of justice against defendant. See, *e.g.*, *People v. Lee*, 2019 IL App (1st) 162563, ¶ 67, 127 N.E.3d 1009 ("[L]engthy jury deliberations and jury notes during deliberations, indicating that they had reached an impasse, demonstrate the closely balanced nature of the evidence in a case.") (citing *People v. Wilmington*, 2013 IL 112938, ¶ 35, 983 N.E.2d 1015).

¶ 44                    2. *Ineffective Assistance of Counsel*

¶ 45    Alternatively, defendant contends counsel's failure to object to Ramey's unqualified expert opinion testimony amounted to ineffective assistance. Claims of ineffective assistance of counsel are reviewed *de novo*. See, *e.g.*, *People v. Miramontes*, 2018 IL App (1st) 160410, ¶ 13, 116 N.E.3d 199.

¶ 46          Ineffective-assistance-of-counsel claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984) (adopting the *Strickland* standard). "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767. "More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 687). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." (Internal quotation marks omitted.) *People v. Peterson*, 2017 IL 120331, ¶ 79, 106 N.E.3d 944. "[W]e may dispose of an ineffective assistance of counsel claim by proceeding directly to the prejudice prong without addressing counsel's performance." *People v. Hale*, 2013 IL 113140, ¶ 17, 996 N.E.2d 607.

¶ 47          Here, for reasons similar to those discussed above, we cannot say there is a reasonable probability the result of defendant's trial would have been different had counsel objected to Ramey's opinion testimony. Even without Ramey's testimony, the jury was still presented with the following evidence: (1) a recorded phone conversation with defendant agreeing to meet Dandy to sell him a gram of heroin; (2) a video showing defendant handing Dandy a substance in exchange for $100; (3) expert opinion testimony that the tested substance contained heroin; and (4) a video of defendant repeatedly calling Dandy a "rat" but saying nothing about Dandy switching out the substance. Again, although defendant argues he gave

Dandy a bag containing Comet, the jury heard this testimony and rejected it. Therefore, we find he has failed to demonstrate he suffered prejudice.

¶ 48                                      B. Excessive Sentence

¶ 49        Defendant next argues his 13-year prison sentence is excessive because it is manifestly disproportionate to the seriousness of delivering 1.1 grams of heroin to a confidential informant.

¶ 50        "Although the legislature has prescribed the permissible ranges of sentences, great discretion still resides in the trial judge in each case to fashion an appropriate sentence within the statutory limits." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E. 2d 207, 209 (1999). In fashioning an appropriate sentence, the trial court must consider "all factors in aggravation and mitigation, including, *inter alia*, the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of [the] defendant's conduct in the commission of it." *People v. Quintana*, 332 Ill. App. 3d 96, 109, 772 N.E.2d 833, 846 (2002). "The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors such as the lack of a prior record, and the statute does not mandate that the absence of aggravating factors requires the minimum sentence be imposed." *Id.* "In considering the propriety of a sentence, the reviewing court must proceed with great caution and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently." *Fern*, 189 Ill. 2d at 53. "A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Id.* at 54.

¶ 51 Here, defendant was convicted of a Class 1 felony, which carries with it a sentencing range of 4 to 15 years in prison. See 720 ILCS 570/401(c)(1) (West 2016); 730 ILCS 5/5-4.5-30(a) (West 2016). However, due to his criminal history, defendant was sentenced as a Class X offender, meaning he faced a sentencing range of 6 to 30 years in prison. See 730 ILCS 5/5-4.5-25(a), 5-4.5-95(b) (West 2016). His 13-year sentence falls within that range and therefore will not be disturbed on appeal unless the trial court abused its discretion by imposing a sentence "greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Fern*, 189 Ill. 2d at 54.

¶ 52 Defendant cites to *People v. Evans*, 143 Ill. App. 3d 236, 492 N.E.2d 1036 (1986), in support of his argument we should reduce his sentence because the 1.1 grams he delivered was barely above the one-gram minimum required to make the offense a Class 1 felony. In *Evans*, the defendant challenged as excessive his 25-year prison sentence for unlawful possession of a controlled substance with intent to deliver, a Class X felony. *Id.* at 238. The *Evans* court agreed the sentence was excessive and reduced it to 10 years. *Id.* at 242-43. The court reasoned, in part, "the 35.1 grams of cocaine found was only slightly in excess of the minimum required to make the offense a Class X felony as opposed to a Class 1 felony." *Id.* at 242. Importantly, the *Evans* court also relied on the trial court's failure to give adequate weight to the defendant's insignificant criminal history, which amounted to a single misdemeanor conviction for possession of marijuana. *Id.* Thus, the court ultimately concluded a near-maximum sentence was excessive in light of the amount of the controlled substance and the defendant's nearly non-existent criminal history. *Id.* at 242-43.

¶ 53 We find defendant's reliance on *Evans* unpersuasive. Initially, we note the defendant in that case received a 25-year sentence, which is nearly twice the length of

defendant's 13-year sentence. *Evans*, 143 Ill. App. 3d at 238. The *Evans* court also reduced the sentence to 10 years, which is only 3 years shorter than the sentence imposed in this case. *Id.* at 243. Moreover, the defendant's criminal history in *Evans* consisted of single misdemeanor conviction. *Id.* at 242. Here, on the other hand, in addition to the two felony convictions that subjected defendant to Class X sentencing, he had been convicted of two other felonies and fourteen misdemeanors. Therefore, the facts of *Evans* are readily distinguishable from the instant case.

¶ 54       A review of the record demonstrates the trial court carefully considered the applicable aggravating and mitigating factors and fashioned an appropriate sentence. The court explicitly stated, "the quantity of the drug in question *** was on the low range for this type of an offense ***. The Court has considered that in terms of the quantity issue." The court further noted that it "stood out particularly" that defendant did not engage in any violence and that defendant had family and friends who cared about him. However, the court found defendant was likely to reoffend given his significant criminal history that included multiple convictions for drug offenses and a longer sentence was necessary to deter others from distributing heroin within the community. After carefully balancing these aggravating and mitigating factors, the court imposed a sentence significantly closer to the 6-year minimum than the 30-year maximum. Accordingly, we cannot say the trial court abused its discretion.

¶ 55                          III. CONCLUSION

¶ 56       For the reasons stated, we affirm the trial court's judgment.

¶ 57       Affirmed.