Docket No. 107028.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

TONI THORNTON, Indiv. and as Special Adm'r of the Estate of Jason Anthony Ebner, Deceased, Appellee, v. FRANCISCO J. GARCINI, M.D., Appellant.

*Opinion filed October 29, 2009.–Modified upon denial of rehearing April 22, 2010.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

The primary issue we address in this appeal is whether expert testimony is required to prove negligent infliction of emotional distress. Defendant, Dr. Francisco Garcini, appeals from the second trial of a medical negligence claim. In that action, plaintiff, Toni Thornton, individually and as special administrator of the estate of her deceased infant son, sought damages for her son's death and compensation for negligent infliction of emotional distress. At the first trial, the jury found in favor of defendant. Plaintiff appealed, and the appellate court granted plaintiff a new trial. *Thornton v. Garcini*, 364 Ill. App. 3d 612 (2006).

On retrial, the jury found in favor of defendant on plaintiff's wrongful-death and survival claims, but in favor of plaintiff on her negligent infliction of emotional distress claim. The appellate court affirmed. 382 Ill. App. 3d. 813.

We allowed defendant's petition for leave to appeal. 210 Ill. 2d R. 315. We now affirm the judgment of the appellate court.

## I. BACKGROUND

On August 28, 2000, plaintiff's son, Jason Anthony, was born prematurely in a breech position, at an approximate gestational age of 24 weeks. During childbirth, Jason's head became stuck in his mother's vagina, with the rest of his body outside the vagina. The infant died when the nurses at the hospital were unable to complete the delivery. Defendant arrived at the hospital an hour and 10 minutes later.

Plaintiff, as administrator of Jason's estate, brought an action for medical negligence against defendant, Silver Cross Hospital, and individual nurses. Plaintiff's suit contained wrongful-death and survival claims. Her suit also included an individual claim for intentional infliction of emotional distress, claiming she suffered emotional distress from the delivery.

At the first trial, the jury found in favor of defendant and the nurses on the wrongful-death and survival claims and the intentional infliction of emotional distress claim. On the intentional infliction of emotional distress claim against the hospital, the jury found for plaintiff and awarded her $175,000. Plaintiff filed posttrial motions against all the defendants. During the pendency of these motions, the hospital and nurses entered into a release of claims and satisfaction of judgment upon payment of $175,000. The trial court later denied the posttrial motion against defendant.

Plaintiff appealed only the judgment in favor of defendant. The appellate court reversed and granted plaintiff a new trial. *Thornton*, 364 Ill. App. 3d 612.

At the second trial, defendant testified he was plaintiff's obstetrician. At 6:35 a.m. on the day of delivery, defendant was called at his home and advised that plaintiff was having contractions. He gave certain orders. The infant partially delivered in a breech position

35 minutes later, at 7:10 a.m. Nurses were present for the delivery, but no physician was present. The infant became entrapped at the neck during the delivery. Defendant instructed the nurses not to deliver the infant unless it could be done easily, because of a risk of decapitation. The nurses were unable to deliver the infant, and he died before defendant left his home. Plaintiff waited over an hour, with the deceased infant partially delivered, until defendant arrived to complete the delivery.

Plaintiff testified about her emotional state from laying in a hospital bed for over an hour with the infant partially delivered. Plaintiff stated she was depressed, and could not eat, or sleep. She could only think about laying there for an hour and 10 minutes, and there was nothing she could do but "sit there like that with my baby." She further testified that she has these thoughts "[a]ll the time" and she has had thoughts of suicide because "[i]t was so horrible" and "I'm always reminded of that hour and ten minutes that I sat there with him."

The infant's father and plaintiff's mother testified to the effect the infant's death and the circumstances of the delivery had on plaintiff. No expert witness testimony was presented on plaintiff's claim for emotional distress.

Plaintiff amended her complaint to conform to the proofs and submitted a negligent infliction of emotional distress claim to the jury. She only submitted her negligent infliction of emotional distress claim to the jury. Plaintiff did not submit her intentional infliction of emotional distress claim to the jury.

The jury found in favor of defendant on the wrongful-death and survival claims and for plaintiff on the negligent infliction of emotional distress claim. The jury award plaintiff $700,000 in damages.

Defendant filed a posttrial motion seeking a judgment notwithstanding the verdict, arguing that plaintiff failed to prove negligent infliction of emotional distress with expert testimony. Defendant's motion also sought a judgment notwithstanding the verdict based on the single recovery rule, and a setoff of the settlement paid by the hospital. The trial court denied defendant's posttrial motion. The appellate court affirmed. 382 Ill. App. 3d 813.

## II. ANALYSIS

### A. Judgment Notwithstanding the Verdict

Defendant contends he is entitled to a judgment notwithstanding the verdict based on plaintiff's failure to produce expert testimony on the cause of her emotional distress. Specifically, defendant argues that plaintiff failed to adduce expert testimony to establish that her emotional distress was caused by the delay in delivering the deceased infant.

Plaintiff argues that defendant forfeited or waived his right to object to the verdict for negligent infliction of emotional distress by failing to object to the jury instructions and to the competence of the lay witnesses who testified about emotional distress.

We disagree with plaintiff that defendant has forfeited this issue. A defendant must object to an error at trial and include it in a written posttrial motion to preserve an issue on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The record indicates defendant repeatedly maintained in the trial court that plaintiff failed to present competent proof of causation for her emotional distress claim, absent expert testimony. Defendant moved for a directed verdict both at the close of plaintiff's case and at the close of all the evidence. In his trial arguments, defendant raised the issue of whether plaintiff presented sufficient evidence as a matter of law to submit the emotional distress issue to the jury. Accordingly, we determine defendant did not forfeit or waive this issue.

We review *de novo* a trial court's ruling on a motion for judgment notwithstanding the verdict. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 132 (1999). Additionally, whether expert testimony is required to establish negligent infliction of emotional distress is an issue of law, subject to *de novo* review. See *Woods v. Cole*, 181 Ill. 2d 512, 516 (1998). A motion for judgment notwithstanding the verdict should only be granted when the evidence and inferences, viewed in the light most favorable to the nonmoving party, "so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992).

Defendant argues that under this court's decision in *Corgan v. Muehling*, 143 Ill. 2d 296 (1991), claims for negligent infliction of

emotional distress must be proven by expert testimony to ensure that any verdict for emotional distress is supported by competent evidence. Conversely, plaintiff contends that *Corgan* does not require expert testimony to establish emotional distress.

In *Corgan*, the plaintiff brought an action for psychological malpractice alleging the defendant therapist violated his duties when he engaged in sexual relations with her under the guise of therapy. This court examined the issue of whether a plaintiff must allege physical symptoms to support a claim for emotional distress. In rejecting such a requirement, we stated:

> "[L]ack of precision is not a justifiable reason to preclude recovery, as expert witnesses such as psychiatrists, psychologists and social workers are fully capable of providing the jury with an analysis of a plaintiff's emotional injuries. ***
>
> ***
>
> *** [T]his court has not lost its faith in the ability of jurors to fairly determine what is, and is not, emotional distress. Furthermore, the women and men of the mental health care field have made significant improvements in the diagnosis, description and treatment of emotional distress." *Corgan*, 143 Ill. 2d at 311-12.

In reaching our conclusion that a plaintiff need not allege physical symptoms of emotional distress, this court quoted *Knierim v. Izzo*, 22 Ill. 2d 73 (1961):

> " 'The stronger emotions when sufficiently aroused do produce symptoms that are visible to the professional eye and we can expect much more help from the men of science in the future. [Citation.] In addition, jurors from their own experience will be able to determine whether *** conduct results in severe emotional disturbance.' " *Corgan*, 143 Ill. 2d at 311-12, quoting *Knierim*, 22 Ill. 2d at 85.

We agree with plaintiff that *Corgan* does not require expert testimony to establish emotional distress. The absence of medical testimony does not preclude recovery for emotional distress. Rather, "[t]he existence or nonexistence of medical testimony goes to the weight of the evidence but does not prevent this issue from being submitted to the jury." *Clark v. Owens-Brockway Glass Container,*

*Inc.*, 297 Ill. App. 3d 694, 701 (1998).

Defendant argues that *Hiscott v. Peters*, 324 Ill. App. 3d 114 (2001), supports his argument that a plaintiff cannot prove a negligent infliction of emotional distress claim without expert testimony. In *Hiscott*, the plaintiffs sought to recover for negligent infliction of emotional distress allegedly resulting from an automobile accident but did not present medical proof of emotional distress. *Hiscott* held that the plaintiffs failed to support their claim of emotional distress with expert medical proof. *Hiscott*, 324 Ill. App. 3d at 126. *Hiscott* concluded that this court's statement in *Corgan* "that it 'has not lost its faith in the ability of jurors to fairly determine what is, and is not, emotional distress' (*Corgan*, 143 Ill. 2d at 312)" does not mean "that all plaintiffs involved in personal injury actions may seek damages for negligently inflicted emotional distress without medically verifiable proof." *Hiscott*, 324 Ill. App. 3d at 126. The appellate court concluded that the plaintiffs' testimony "more appropriately [fell] under the definition of 'loss of a normal life' " than emotional distress. *Hiscott*, 324 Ill. App. 3d at 127. We determine that the court in *Hiscott* misread the holding in *Corgan*. Accordingly, we overrule the portions of *Hiscott* limiting *Corgan* to its facts and requiring all claims for severe emotional distress to be supported by expert medical proof. See *Hiscott*, 324 Ill. App. 3d at 126. We hold that expert testimony, while it may assist the jury, is not required to support a claim for negligent infliction of emotional distress.

This court's recent decision in *People v. Hudson*, 228 Ill. 2d 181 (2008), further supports our conclusion. In *Hudson*, the trial court allowed a 16-year-old victim of a home invasion to present lay testimony to establish her psychological trauma. On appeal, the defendant argued that expert testimony was required to establish psychological harm. This court held that "jurors could reasonably find, without the assistance of expert testimony, that the circumstances of the offense were such as to cause psychological injury to a 16-year-old girl." *Hudson*, 228 Ill. 2d at 199. *Hudson* did recognize, however, that expert testimony may be required in some cases to prove psychological injury, but it was unnecessary given the facts of that case.

We believe the circumstances of this case are similar to those in *Hudson*. Based on personal experience alone, the jury could

reasonably find that the circumstances of this case caused plaintiff emotional distress. Plaintiff explicitly testified on her experience of having the deceased infant protrude from her body for over an hour while awaiting Dr. Garcini's arrival. Plaintiff, the infant's father, and plaintiff's mother all testified about plaintiff's behavior and emotional state following the event. The record sufficiently established that plaintiff suffered emotional distress.

Defendant also contends expert proof of causation is necessary when there is more than one possible cause of the emotional distress "to ensure that the recovery is only for compensable emotional injuries proximately caused by the event for which defendant was found liable, and not for grief suffered, or other emotional distress resulting from other causes for which defendant is not liable." According to defendant, causation is at issue here when plaintiff simultaneously lost her infant and suffered a traumatic event by having the infant protruding from her body until defendant's arrival. Defendant surmises that expert testimony would have established whether the delay in delivering the deceased infant caused the entire emotional injury, as opposed to the death of the infant.

Here, plaintiff's testimony established that the emotional distress she experienced derived directly from defendant's delay in delivering the deceased infant and not from the death of her child. Plaintiff testified that she was depressed, and could not eat, or sleep. She could only think about laying there for an hour and 10 minutes, and there was nothing she could do but "sit there like that with my baby." She further testified that she has these thoughts "[a]ll the time" and she has had thoughts of suicide because "[i]t was so horrible" and "I'm always reminded of that hour and ten minutes that I sat there with him."

Viewing the evidence in the light most favorable to the plaintiff as we must here, the trial testimony established that she suffered emotional distress because of defendant's delay in delivering the deceased baby. We cannot say that the evidence so overwhelmingly favored defendant that no contrary verdict could ever stand. *Maple,* 151 Ill. 2d at 453. Accordingly, we hold defendant is not entitled to a judgment notwithstanding the verdict due to the lack of expert testimony on the issue of plaintiff's emotional distress.

In the alternative, defendant argues he is entitled to a judgment notwithstanding the verdict because the verdict against him violates

the single-recovery rule. Defendant also argues that if the single-recovery rule is inapplicable in this case, that he is entitled to a setoff for the amount paid to plaintiff by the hospital.

We first address defendant's argument that the single-recovery rule prohibits plaintiff from seeking recovery from him for emotional distress. According to defendant, plaintiff suffered a single emotional distress injury. The jury in the first trial determined the amount of plaintiff's damages for that injury, and plaintiff accepted full payment in satisfaction of the judgment amount against the hospital. Defendant contends that the single-recovery rule prohibits plaintiff from seeking a second recovery from him for the same emotional distress injury.

Again, our standard of review for a trial court's ruling on a motion for judgment notwithstanding the verdict is *de novo*. *McClure*, 188 Ill. 2d at 132. Generally, obtaining a judgment against one tortfeasor will not bar a plaintiff from bringing claims against any other tortfeasors. *Saichek v. Lupa*, 204 Ill. 2d 127, 137 (2003). A plaintiff may, however, receive only one full compensation for his or her injuries, and double recovery for the same injury is not allowed. *Saichek*, 204 Ill. 2d at 137. "The initial judgment, however, will normally serve as a limit on the plaintiff's entitlement to redress." *Saichek*, 204 Ill. 2d at 137.

Plaintiff argues the appellate court correctly found that defendant failed to preserve this issue by raising it for the first time in a posttrial motion. We agree with plaintiff that defendant has forfeited his right to claim the single-recovery rule prohibits plaintiff from seeking damages from defendant for emotional distress.

Defendant did not claim the single-recovery rule until he filed his posttrial motion. The basis for defendant's claim, however, arose at the end of the first trial. Defendant had multiple opportunities to raise this theory before the second trial concluded: (1) as an affirmative defense in the second trial; (2) through pretrial motions *in limine* in the second trial; (3) by filing a motion for direct verdict in the second trial; and (4) during the jury instruction conference in the second trial. Due to defendant's failure to raise this issue before the entry of the verdict after the second trial, plaintiff had no notice or opportunity during trial to defend against defendant's claim. Thus, defendant forfeited his right to assert the single-recovery rule by raising this issue for the first time in his posttrial motion. See *MidAmerica Bank, FSB*

*v. Charter One Bank, FSB*, 232 Ill. 2d 560 (2009).

Finally, we address defendant's argument that he is entitled to a setoff in the amount paid by the hospital to plaintiff. We held in our original opinion that defendant forfeited his setoff claim by raising it for the first time in his posttrial motion. Relying on *MidAmerica Bank*, we reasoned that section 2–608 of the Code of Civil Procedure (735 ILCS 5/2–608 (West 2002)) required a setoff claim to be raised as a cross-claim in the defendant's answer. Upon consideration of defendant's petition for rehearing, we are persuaded that a modification to this court's opinion is necessary.

In his petition for rehearing, defendant argues that this court improperly concluded that he forfeited his claim for a setoff and urges this court to address the issue on the merits. According to defendant, a defendant's request for setoff to reflect amounts paid by settling defendants is in the nature of an enforcement action and a setoff that is not a counterclaim to be evaluated by the trier of fact may be brought at any time. See *Star Charters v. Figueroa*, 192 Ill. 2d 47, 48-49 (2000). In *Star Charters*, this court held that a motion for setoff may be brought after trial, as it is in the nature of an enforcement action and does not arise as a result of the trial.

The term "setoff" is used in two distinct ways. In one sense, a setoff " 'refers to the situations when a defendant has a distinct cause of action against the same plaintiff who filed suit against him' and is subsumed procedurally under the concept of counterclaim." *Matsushita Electric Corp. of America v. Home Indemnity Co.*, 907 F. Supp. 1193, 1198 (N.D. Ill. 1995), quoting *Hentze v. Unverfehrt*, 237 Ill. App. 3d 606, 612 (1992). Applying this meaning, a setoff may refer to a situation when the defendant claims that the *plaintiff* has done something that results in a reduction in the defendant's damages. When a defendant pursues this type of setoff, the claim must be raised in the pleadings. See *MidAmerica Bank*, 232 Ill. 2d at 574-75.

In another sense, however, the term "setoff" may refer to a defendant's request for a reduction of the damage award because a *third party* has already compensated the plaintiff for the same injury. This occurs, for example, when a codefendant who would be liable for contribution settles with the plaintiff. This type of setoff may be raised at any time. See *Star Charters*, 192 Ill. 2d 47.

-9-

In this case, defendant did not have a cause of action against plaintiff. Rather, defendant sought a reduction in damages because a third party settled with plaintiff. Thus, defendant's setoff request constitutes an enforcement action rather than a counterclaim. Pursuant to *Star Charters*, defendant's claim for a setoff was not forfeited simply because it was not raised in the pleadings. Accordingly, we now address defendant's claim that he is entitled to a setoff in the amount paid by the hospital to plaintiff.

Defendant argues that this case is analogous to *Saichek v. Lupa*, 204 Ill. 2d 127 (2003), and that he is entitled to a setoff of the full $175,000 paid by the hospital. Relying on *Saichek*, defendant contends the payment was in satisfaction of the judgment for plaintiff's emotional damages rendered against the hospital in the first trial and was not a settlement. We conclude that *Saichek* is readily distinguishable.

In *Saichek*, a default judgment was entered against one of two defendants, and the plaintiff brought nonwage garnishment proceedings to collect the default judgment. No appeal was taken. The defendant's insurance carrier paid the judgment, and the parties entered into a "Satisfaction Release of Judgment" releasing the judgment against only the insured and the carrier while expressly retaining the pending cause against the second defendant. Defendant here argues that some language in the *Saichek* agreement is similar to language in the instant agreement. He fails to recognize the significance of additional language in the agreement stating that the document broadly released and discharged the hospital, the individual nurses, "and any other employees, officers, agents, personal representatives, assignee and any other persons or firms who are or might be liable from all claims, demands or rights of action which [Toni Thorton, individually and as special administrator of the estate of Jason Ebner, deceased,] or any of us, or any person or firm acting or claiming to act in my behalf, now have or might ever have, because of loss or expense, injuries or damages to person. or property, both known or unknown, resulting or to result from any hospital care on or about August 28, 2000 at any facility operated by Silver Cross Hospital wherein the undersigned claimant asserts negligence, malpractice or other malfeasances on the part of Silver Cross Hospital, its agents, employees, officers or representatives." The

agreement also stated that the "[p]ayment shall be the full, final and complete satisfaction of any and all claims, judgments, or causes of action as between said Plaintiff and Silver Cross Hospital." Moreover, the parties "SPECIFICALLY UNDERSTOOD AND AGREED that this *settlement* is FULL, COMPLETE AND FOREVER FINAL, *but is NOT to be construed as an admission of any legal liability* for any of the consequences of the aforesaid incident, on the part of any of the persons and firms thereby released." (Emphases added.) Those provisions are inconsistent with the conclusion that the agreement was a purely satisfaction of judgment and not a settlement.

Moreover, the facts underlying the agreements in the two cases are far different. Here, the parties entered into the settlement agreement while posttrial litigation was still ongoing. The parties' settlement agreement released multiple claims against both the hospital and the nurses, and no judgment against the nurses had even been entered. In contrast, the agreement in *Saichek* did not release any unresolved claims. Instead, the agreement acknowledged only that the judgment had been satisfied. In addition, *Saichek* reviewed the dismissal of the plaintiff's lawsuit against the second defendant, not the propriety of a setoff after the entry of judgment in that case. Accordingly, we reject defendant's contention that *Saichek* supports his position that the agreement here was a mere satisfaction of the judgment, justifying a setoff of the full payment received by plaintiff, and not a settlement, requiring an allocation of the settlement proceeds.

The determination of whether a defendant is entitled to a setoff is a question of law and, therefore, subject to *de novo* review. *Board of Trustees of Community College District. No. 508 v. Coopers & Lybrand*, 208 Ill. 2d 259, 266 (2003). Where, as here, the setoff is in the nature of an enforcement action, the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 2002)) controls. Section 2(c) of the Contribution Act provides:

> "When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the

-11-

others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." 740 ILCS 100/2(c) (West 2002).

Section 2(c) is intended to prevent double recovery. *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 368 (1995). Section 2(c) also "ensures that a nonsettling party will not be required to pay more than its *pro rata* share of the shared liability." *Pasquale*, 166 Ill. 2d at 368. Generally, a nonsettling party seeking a setoff bears the burden of proving what portion of a prior settlement was allocated or attributable to its share of the liability. *Pasquale*, 166 Ill. 2d at 369.

Here, plaintiff's $175,000 settlement with the hospital specifically provided that plaintiff was not settling her claims against defendant. The settlement was not merely for damages sought by Toni Thornton, individually, but also for damages sought by Toni Thornton, as special administrator of the estate of Jason Ebner, deceased. In addition, it released a variety of claims against the hospital as well as against the individual nurses who had not been found liable prior to settlement. The judgment against defendant in the second trial, however, was only for Toni's individual claim of negligent infliction of emotional distress.

Defendant argues that he need not establish the proper allocation of the settlement proceeds under the rationale in *Patton v. Carbondale Clinic, S.C.*, 161 Ill. 2d 357 (1994). We reject that argument because *Patton* involved a defendant who was not a party to the case underlying the settlement, unlike defendant here, making its rationale inapplicable. Defendant also contends he is entitled to a setoff of the full settlement amount but admits he has failed to offer any proof of the proper allocation based on his share of the liability. Given the multiple parties, injuries, and claims settled in plaintiff's agreement with the hospital, the allocation of the full settlement proceeds to set off defendant's liability for only the negligent infliction of emotional distress cannot be justified in the absence of any supporting proof. No independent judicial determination of the proper allocation is possible. Accordingly, we hold that the trial court properly denied defendant's request for a setoff.

## III. CONCLUSION

We hold that expert testimony is not required to support a claim for negligent infliction of emotional distress. We further hold that defendant has forfeited the single-recovery rule and is not entitled to a setoff. We therefore affirm the judgment of the appellate court.

*Affirmed.*