2026 IL App (2d) 240667
No. 2-24-0667
Opinion filed January 22, 2026

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MARGARET THOMPSON, Individually and as Administrator of the Estate of Michael B. Thompson, Deceased, | ) ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-LA-184 |
| CENTEGRA MANAGEMENT SERVICES, INC.; NIRAV C. SHAH, M.D.; and MCHENRY RADIOLOGISTS AND IMAGING ASSOCIATES, S.C., | ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Centegra Management Services, Inc., Defendant-Appellant). | ) ) ) | Honorable Kevin G. Costello, Judge, Presiding. |

PRESIDING JUSTICE KENNEDY delivered the judgment of the court, with opinion.
Justices Jorgensen and Mullen concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant Centegra Management Services, Inc. (Centegra), appeals from the judgment against it in favor of plaintiff, Margaret Thompson, and the trial court's denial of its motion for a setoff.

¶ 2 At issue on this appeal is whether, under the Joint Tortfeasor Contribution Act (Act) (740 ILCS 100/0.01 *et seq.* (West 2022)), Centegra was entitled to a setoff of the judgment against it in

the amount of $950,000. The $950,000 sum was the low payment of a high-low agreement between plaintiff and defendants Nirav C. Shah, M.D. (Dr. Shah), and McHenry Radiologist and Imaging Associates, S.C. (collectively, the Shah defendants). The Shah defendants had agreed to pay plaintiff $950,000 if the jury found that the Shah defendants were not liable for the wrongful death of Michael B. Thompson, whose estate plaintiff administered. If the Shah defendants had been found liable, they had agreed to pay plaintiff $1,950,000.[1]

¶ 3    The jury found Centegra liable to plaintiff, but it found the Shah defendants not liable, triggering the $950,000 payment by the Shah defendants. Posttrial, Centegra moved for a setoff of the judgment against it in the amount of $950,000, and the trial court denied its motion. For the following reasons, we reverse.

¶ 4                                    I. BACKGROUND

¶ 5    Whether Centegra was entitled to a setoff arises in the context of a medical malpractice suit, which we briefly recount. On September 8, 2015, Michael B. Thompson went to a Centegra urgent care facility with complaints of pain in his back and lower abdomen, where he was given a differential diagnosis that included appendicitis. Michael underwent examination and imaging, including an abdominal CT scan. Dr. Shah reviewed the CT scan and found Michael's appendix normal. Regarding Michael's aorta, Shah noted "mild to moderate atherosclerotic changes" but "without definite aneurysm."

---

[1]There was a discrepancy in the record regarding the high payment. In plaintiff's attorney's July 25, 2024, affidavit, the high payment was stated as $1.9 million, but when asked by the trial court to confirm the range at the August 26, 2024, posttrial hearing, plaintiff's attorney confirmed the high payment was $1.95 million.

¶ 6    Michael was discharged from urgent care with a diagnosis of hypertension and abdominal and back pain, and he was given medications for high blood pressure and his pain. The next day, Michael died of a ruptured aortic dissection. He was 50 years old.

¶ 7    Plaintiff filed her initial complaint against defendants on May 31, 2017, alleging that medical negligence caused Michael's wrongful death, and the amended complaints continued to allege medical negligence causing wrongful death. Plaintiff alleged, in pertinent part, that all defendants were negligent in failing to diagnose Michael's aortic dissection, which caused his death and resulted in damages to his surviving family members. A jury trial commenced on April 23, 2024.

¶ 8    Closing arguments were given on May 2, 2024, and jury deliberations began immediately thereafter. During closing argument, plaintiff's attorney requested damages of at least $10 million.

¶ 9                            A. High-Low Agreement

¶ 10    During jury deliberations on May 2, 2024, plaintiff and the Shah defendants began talks of a high-low agreement. On May 3, 2024, while the jury continued to deliberate, plaintiff and the Shah defendants reached a high-low agreement, with a low payment of $950,000 if the Shah defendants were found not liable, and a high payment of $1.95 million if they were found liable. The agreement further provided that neither side would be allowed to appeal. The jury returned its verdict within 30 minutes of the parties entering into the high-low settlement agreement.

¶ 11                            B. Jury Verdict

¶ 12    On May 3, 2024, the jury returned a verdict using verdict form A,[2] finding Centegra liable to plaintiff but finding the Shah defendants not liable to plaintiff. The jury found the total damages

---

[2]The other verdict form, verdict form B, was to be used only if the jury found for all defendants

suffered by Michael's estate were $2,920,575, itemized as follows: $325,000 for grief, sorrow, and mental suffering; $325,000 for loss of society; $325,000 for the loss of instruction, moral training, and superintendence of education that Michael reasonably would have provided had he lived; $20,000 for the loss of money, benefits, goods, and services that Michael was likely to have contributed; $1,600,575 for the loss of money, benefits, goods, and services that Michael was likely to have contributed in the future; and $325,000 for the loss of normal life experienced by Michael.

¶ 13    Two special interrogatories were submitted to the jury. One asked the jury whether the nurse practitioner who examined Michael at Centegra's urgent care facility was a proximate cause of Michael's injuries; the jury answered yes. The other asked the jury whether it found that Dr. Shah was a proximate cause of Michael's death; it answered no.

¶ 14    That same day, the trial court entered judgment in favor of plaintiff and against Centegra in the amount of $2,920,575 plus costs, and it continued the case to determine prejudgment interest. The trial court further entered judgment in favor of the Shah defendants and against plaintiff.

¶ 15                    C. Centegra's Posttrial Motion

¶ 16    On June 28, 2024, Centegra moved posttrial for, among other things, a setoff of the judgment against it. In its motion, Centegra stated that it understood that plaintiff had received a settlement of $950,000 from the Shah defendants, and it argued that the court should set off the judgment against Centegra by that amount. Its rationale was that a plaintiff is entitled to only one recovery for claimed injuries in one cause of action, and plaintiff would receive a windfall if the trial court did not set off the judgment against Centegra by the $950,000 paid by the Shah

---

and against plaintiff.

defendants. It argued that such a double recovery was prohibited by the Act (740 ILCS 100/2(c) (West 2022)).

¶ 17   Plaintiff responded to Centegra's posttrial motion, arguing, in relevant part, that Centegra was not entitled to a setoff for several reasons: (1) Centegra had forfeited its right to a setoff by failing to file a claim for contribution against the Shah defendants, (2) the Act did not apply because the Shah defendants were not liable in tort, and (3) the Act did not apply because there was no good-faith finding of a settlement release.

¶ 18   On August 26, 2024, the trial court heard Centegra's posttrial motion for setoff. The trial court stated that the $950,000 payment was triggered because, "although there was a finding of no liability as to Dr. Shah, there was apparently a contractual agreement between plaintiff and [the Shah defendants to pay] a minimum of $950,000 regardless of the verdict." It asked Centegra's counsel how the Act would apply here, "given that the jury only adjudicated your client as being the sole tortfeasor here?" In response, Centegra's counsel stressed the timing of the settlement between plaintiff and the Shah defendants. Counsel argued that the agreement was reached before the jury rendered its verdict, when the Shah defendants' liability was still in question.

¶ 19   The trial court then asked Centegra's counsel how the Shah defendants were liable in tort under the Act. Counsel responded they were "tacitly admitting to some form of liability" by entering into the high-low agreement. The court disagreed that the agreement constituted an admission of liability.

¶ 20   At one point, Centegra's counsel stated that Centegra had not brought a claim for contribution against the Shah defendants and that the two-year limitations period for bringing such a claim had expired. Counsel argued, however, that Centegra did not need to bring a claim for contribution under the Act to receive a setoff under the Act.

¶ 21 In plaintiff's response to the issue of setoff, plaintiff's counsel argued that there was no common liability in this case because the Shah defendants were found not liable. Counsel continued that only Centegra was found liable and, therefore, under the Act, Centegra could not pay more than its *pro rata* share of damages because it was solely responsible for all awarded damages. Plaintiff's counsel also disagreed that plaintiff received a double recovery, arguing that plaintiff took on substantial risk in entering the high-low agreement, capping recovery to $1.95 million when counsel had asked the jury for $10 million. Counsel characterized the payment from the Shah defendants as a "second recovery—separate recovery from Centegra based on tort. One was contract. One was tort." Finally, counsel argued that the Act did not apply because Centegra had not filed a contribution claim.

¶ 22 On October 2, 2024, the trial court ruled on Centegra's posttrial motion. In relevant part, the court denied Centegra's request for a setoff of $950,000. It explained that Centegra had failed to show that the Act applied, as Centegra had never petitioned for contribution against the Shah defendants, thus waiving a contribution claim. Regarding section 2(c) of the Act, the court found (1) that the Shah defendants were not liable in tort and (2) that no party sought, nor did the court make, a good-faith finding.

¶ 23 Regarding Centegra's argument of an improper windfall to plaintiff to recover the awarded damages in addition to the high-low agreement payment, the court found that, as explained by the Georgia Supreme Court in *Broda v. Dziwura*, 689 S.E.2d 319 (Ga. 2010), "a more compelling argument is that allowing a set-off would constitute an inequitable windfall in favor of defendants like Centegra." The court explained that plaintiff took a risk in entering the high-low agreement. For instance, if the jury had found $3 million in damages against the Shah defendants but no liability from Centegra, plaintiff would have lost out on over $1 million. The court continued that,

likewise, the Shah defendants took a risk, and they realized that risk: they had to pay plaintiff $950,000 despite being found not liable. The court concluded that "[t]here is nothing inequitable in requiring Centegra to pay the amount the jury has determined it owes to Plaintiff in damages," and it was "persuaded by the reasoning of the Georgia Supreme Court in *Broda*."

¶ 24    On October 29, 2024, the trial court entered an amended judgment order *nunc pro tunc* that included $497,617.41 in prejudgment interest, for a total judgment against Centegra of $3,418,192.41, plus costs.

¶ 25    On November 14, 2024, Centegra made partial payment of the amended judgment to plaintiff in the amount of $2,418,529.13. The amount purportedly reflected the judgment if Centegra's request for a setoff had been granted, plus prejudgment and postjudgment interest through November 15, 2024. Plaintiff confirmed receipt of payment.

¶ 26    This timely appeal followed.

¶ 27                                   II. ANALYSIS

¶ 28    The central issue raised on appeal is whether Centegra was entitled to a setoff of the judgment against it. Whether a defendant is entitled to a setoff is a question of law, which we review *de novo*. *Thornton v. Garcini*, 237 Ill. 2d 100, 115-16 (2009).

¶ 29    Regarding Centegra's right to a setoff, Centegra argues that (1) it did not need to file a contribution action to preserve its right to a setoff; (2) the Shah defendants were "liable in tort" under section 2(c) of the Act (740 ILCS 100/2(c) (West 2022)); (3) the trial court did not need to make a good-faith finding; and (4) the trial court should not have relied on foreign case law, namely, *Broda*, 689 S.E.2d 319. Further, Centegra requests that, if we agree it was entitled to a setoff, we remand with instructions to declare the judgment satisfied by its $2,418,529.13 payment to plaintiff on November 14, 2024.

¶ 30    For the following reasons, we hold that Centegra was entitled to a setoff of the judgment against it and remand with instructions to enter an amended judgment.

¶ 31                          A. Centegra's Right to Request a Setoff

¶ 32    Centegra first contends that it did not forgo its right to request a setoff. Centegra argues that its right to a setoff exists at common law and is merely codified by the Act. Therefore, Centegra argues that it did not need to file a claim for contribution under the Act to preserve its right to a setoff and that it could raise its right to a setoff at any time.

¶ 33    Plaintiff responds that Centegra forfeited its right to a setoff of $950,000 because it never filed a claim for contribution.

¶ 34    We agree with Centegra that it did not need to file a claim for contribution to preserve its right to seek a setoff. The term "setoff" may be used in two different ways: (1) to refer to situations where a defendant has a distinct cause of action against the plaintiff suing the defendant, or (2) to refer to a defendant's request for a reduction of the damage award because a third party, such as a codefendant, has already compensated the plaintiff for the same injury. *Thornton*, 237 Ill. 2d at 113. In the first meaning of setoff, the setoff claim must be raised in the pleadings, but in the second meaning, the setoff request may be raised at any time. *Id.*; see *Barkei v. Delnor Hospital*, 207 Ill. App. 3d 255, 264-65 (1990). When a defendant seeks a reduction in damages because a third party settled with a plaintiff, the setoff request constitutes an enforcement action rather than a counterclaim, and the setoff request is not forfeited simply because it is not raised in the pleadings. *Thornton*, 237 Ill. 2d at 113-14; see *Star Charters v. Figueroa*, 192 Ill. 2d 47, 48-49 (2000) (explaining that a request for setoff does not seek to modify but rather satisfy the judgment and, because the request is not a motion directed against the judgment, the request is not subject to the 30-day limit applicable to posttrial motions).

¶ 35    This case falls squarely into the second meaning of a setoff, permitting Centegra to raise its request for a setoff at any time, including posttrial. Accordingly, the trial court erred in concluding that Centegra forfeited its request for a setoff. We now proceed to whether Centegra was entitled to a setoff under the Act.

¶ 36                                    B. Liability in Tort

¶ 37    Centegra next argues that the Shah defendants were liable in tort for purposes of section 2(c) of the Act. Section 2(c) provides:

> "When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." 740 ILCS 100/2(c) (West 2022).

Centegra contends that the legislative intent embodied in section 2(c) is that a tort plaintiff is entitled to only one satisfaction for an injury. *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 367-68 (1995). It also argues that section 2(c) contemplates settlements before a verdict is reached, and if we were to require a determination of liability as a condition to setoff, we would create an absurd result requiring nonsettling defendants to prove that the settling defendants were liable in tort before they could obtain a setoff. Furthermore, Centegra argues that a high-low agreement is clearly a settlement agreement for purposes of section 2(c). Last, Centegra contends that the trial court's reliance on the Georgia Supreme Court's decision in *Broda*, 689 S.E.2d 319, was misplaced for several reasons, including that *Broda* is at odds with Illinois law and the Restatement (Second) of Torts § 885 (1979).

¶ 38    Where, as here, the setoff is in the nature of an enforcement action, the Act controls. *Thornton*, 237 Ill. 2d at 116. As we must interpret the Act, we are presented with an issue of statutory interpretation, which is a question of law we review *de novo*. *McHenry Township v. County of McHenry*, 2022 IL 127258, ¶ 55. Our primary goal in interpreting a statute is to ascertain the legislature's intent. *Tillman v. Pritzker*, 2021 IL 126387, ¶ 17. The best indicator of legislative intent is the plain and ordinary meaning of the language of the statute. *Id.* Statutes must be construed to avoid results that are absurd or that the legislature could not have intended. *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 27. We also view all provisions of a statutory enactment as a whole, interpreting words or phrases in light of other relevant provisions of the statute. *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007). In determining the legislative intent, "we may properly consider not only the language of the statute, but also the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved." *Id.*

¶ 39    Before interpreting "liable in tort" under section 2(c) of the Act, we must review whether the high-low agreement in question is a release or covenant contemplated under section 2(c) of the Act. Generally, high-low agreements are considered settlement agreements. *Pinske v. Allstate Property & Casualty Insurance Co.*, 2015 IL App (1st) 150537, ¶ 22; *High-Low Agreement*, Black's Law Dictionary (12th ed. 2024) ("*A settlement* in which a defendant agrees to pay the plaintiff a minimum recovery in return for the plaintiff's agreement to accept a maximum amount regardless of the outcome of the trial." (Emphasis added.)); *cf. Johnson v. Advocate Health & Hospitals Corp.*, 2025 IL App (1st) 230087, ¶ 85 (while a high-low agreement is a settlement agreement, it is a conditional settlement that requires a case to proceed to a verdict and thus is not a settlement for purposes of the prejudgment interest statute).

¶ 40    More specifically, high-low agreements are a form of a covenant not to enforce judgment, in that a plaintiff promises a defendant that it will not enforce a judgment beyond the high amount in exchange for a promise by the defendant to pay at least the low amount regardless of the outcome at trial. See 740 ILCS 100/2(c) (West 2022) ("When a release or covenant not to sue *or not to enforce judgment* is given ***." (Emphasis added.)). Accordingly, we find that the high-low agreement, which had its conditional low payment triggered by the not-liable verdict for the Shah defendants, was a settlement for purposes of section 2(c) of the Act.

¶ 41    We now turn to interpretation of "liable in tort" under section 2(c) of the Act. In the context of contribution under section 2(a) of the Act, liability in tort clearly means *potential* tort liability determined at the time of the plaintiff's injury. *Raab v. Frank*, 2019 IL 124641, ¶ 21; *Antonicelli v. Rodriguez*, 2018 IL 121943, ¶ 19 ("Whether a person is subject to liability in tort for purposes of the Contribution Act is determined at the time of the injury."); *Saunders v. Orbitz Worldwide, LLC*, 2023 IL App (1st) 221018, ¶ 19. Plaintiff contends that section 2(c) should be interpreted differently than section 2(a), noting the drafting differences between the two sections. Compare 740 ILCS 100/2(a) (West 2022) ("where 2 or more persons are *subject to liability in tort* arising out of the same injury *** or the same wrongful death" (emphasis added)), with *id.* § 2(c) ("one or more persons *liable in tort* arising out of the same injury or the same wrongful death" (emphasis added)).

¶ 42    We reject plaintiff's argument. This court has long held that section 2(c) of the Act does not require proof that settling codefendants were actual tortfeasors, as this "would thwart the mandated purposes of the Act and the policy against double recovery." See *Nguyen v. Tilwalli*, 144 Ill. App. 3d 968, 972 (1986). The holding in *Nguyen* is sound. Most settlements covered by section 2(c) will occur before a factfinder's determination of liability. To interpret "liable in tort"

to require actual proof of liability would necessitate additional, and likely extensive, judicial hearings to determine a settling defendant's liability, significantly reducing judicial economy, and would generally frustrate the legislative intent to prevent double recovery. See *Thornton*, 237 Ill. 2d at 116 ("Section 2(c) [of the Act] is intended to prevent double recovery.").

¶ 43    Given the existing case law and clear legislative intent, the only reasonable interpretation of section 2(c)'s phrase "liable in tort" is an interpretation consistent and harmonious with the interpretation of section 2(a)'s phrase "subject to liability in tort." That is, both phrases refer to a defendant's potential liability in tort determined at the time of the plaintiff's injury. Under this interpretation of section 2(c), the Shah defendants were liable in tort, as Dr. Shah provided medical services for Michael, including examination of a CT scan of Michael's aorta, the day before Michael's aorta ruptured.

¶ 44    We decline plaintiff's invitation to carve out an exception in section 2(c) for high-low agreements. High-low agreements, like the one in this case, are simply a form of a settlement agreement anticipated by the Act, which are negotiated before a verdict or finding to hedge the risks of the settling parties. We see no reason to deviate from the clear legislative intent that settlements by a joint tortfeasor may be set off from the judgment against a nonsettling tortfeasor, consistent with the principle in Illinois permitting a plaintiff only one recovery for an injury (*Chuttke v. Fresen*, 2017 IL App (2d) 161018, ¶ 10 ("A plaintiff is entitled to only one recovery and only one satisfaction for her injuries ***.")). The fact that the Shah defendants were found not liable after entering the high-low agreement is immaterial; what is material is that the $950,000 low payment was part of a negotiated settlement with plaintiff for Michael's wrongful death.

¶ 45    Having established the applicable law in Illinois, we agree with Centegra that the trial court's reliance on *Broda*, 689 S.E.2d at 320-21, was misplaced. Although decisions of foreign

courts may be cited as persuasive authority where Illinois authority on point is lacking or absent (*Carroll v. Curry*, 392 Ill. App. 3d 511, 517 (2009)), *Broda* is at odds with existing Illinois law and thus is not persuasive authority on the issue of Centegra's request for setoff.

¶ 46    In *Broda*, the plaintiffs were in a car accident, and they sued the driver who caused the accident and the driver's employer for negligently causing their injuries. *Broda*, 689 S.E.2d at 320. The driver's employer entered into a high-low agreement with the plaintiffs, agreeing, in relevant part, to pay $250,000 even if the employer was found not liable. *Id.* The jury returned a verdict of $1 million against the driver but found the employer not liable, triggering the $250,000 low payment. *Id.* The driver sought to set off the $1 million judgment by the $250,000 settlement amount. *Id.* After the trial court denied the driver's motion, the driver appealed, and the case eventually reached the Georgia Supreme Court, which held that the driver was not entitled to a setoff. *Id.* at 320-21.

¶ 47    The Georgia Supreme Court explained that, in a tort action, "a benefit bestowed on the injured party should not be shifted so as to create a windfall for the tortfeasor," and a windfall, if any, must benefit the injured party. *Id.* at 321. The court continued that "a tortfeasor cannot diminish his liability based on payments made by a non-tortfeasor," stating that principles of basic fairness and justice dictated that a tortfeasor cannot benefit from a plaintiff's "good fortune in reaching settlements with other potential defendants not determined to be liable." (Internal quotation marks omitted.) *Id.* A setoff was available to the driver only if the employer was found liable, at least in part, for the plaintiffs' injuries, and the driver had been found solely responsible for their injuries, thus precluding a setoff. *Id.*

¶ 48    The Georgia Supreme Court's analysis in *Broda* is unpersuasive here because it espoused a policy regarding setoffs that is at odds with Illinois's policy. Illinois has a clear policy against a

plaintiff receiving a windfall through a double recovery. *E.g.*, *Maher v. Chicago Park District*, 269 Ill. App. 3d 136, 141 (1994). That policy is codified within section 2(c) of the Act. *Evans v. Tabernacle No. 1 God's Church of Holiness in Christ*, 283 Ill. App. 3d 101, 109 (1996) (recognizing that section 2(c) of the Act "condemns a double recovery"). Illinois law is also consistent with the Restatement (Second) of Torts, which states that payment made in compensation of a claim diminishes the claim against other tortfeasors for the same harm regardless of whether the person making the payment is liable for the injury. Restatement (Second) of Torts § 885(3) (1979). Section 885(3) of the Restatement provides in full:

> "A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after the judgment." Restatement (Second) of Torts § 885(3) (1979).

Further, comment f to section 885(3) explains that the "older rule was that the payments did not diminish the claim, which in effect allowed double compensation to the plaintiff ***. This has now generally given way to the rule stated, that the claim is diminished if compensation was intended." Restatement (Second) of Torts § 885(3) cmt. f (1979).

¶ 49 Illinois thus favors setoffs of settlements. In contrast, Georgia disfavors setoffs, as illustrated by the Georgia Supreme Court in *Broda* permitting plaintiffs to recover both the full judgment and the settlement based on the state's policy principles and without any reference to any applicable statutory scheme. In short, Georgia law permits a double recovery, and Illinois law does not.

¶ 50    Finally, we address plaintiff's remaining arguments. Plaintiff contends that the payment by the Shah defendants was based on a conditional contract, not on tort. That is, when the jury found the Shah defendants not liable, their liability in tort under the Act was extinguished, leaving only their contractual liability. Plaintiff's logic is directly at odds with the text of section 2(c) of the Act. First, as we have explained, potential liability in tort is all that section 2(c) requires when the section requires persons be "liable in tort." When the Shah defendants entered the high-low agreement, they had potential liability in tort to plaintiff, and they entered the high-low agreement because of their risk of liability. Furthermore, plaintiff's logic would unreasonably extend to any settlement that extinguishes liability. For example, after a release of liability, tort liability is extinguished and the contractual obligations of the release are what remain. To preclude a setoff based on a release of liability would be directly at odds with the plain language of section 2(c) and the intent of the legislature to permit setoffs of settlements.

¶ 51    Next, plaintiff cites two Illinois Supreme Court cases that purportedly permit double compensation of plaintiff's injury in this case. However, plaintiff's case law is readily distinguishable. In *Arthur v. Catour*, 216 Ill. 2d 72 (2005), the supreme court did not examine setoffs under the Act but instead addressed an issue relating to the collateral source rule, which "protects collateral payments made to or benefits conferred on the plaintiff by denying the defendant any corresponding offset or credit." *Id.* at 78. For the collateral source rule to apply, the benefits received by the injured party must be from a source "wholly independent of, and collateral to, the tortfeasor." (Internal quotation marks omitted.) *Id.* Consequently, the collateral source rule does not apply to setoffs among joint tortfeasors under the Act, because a joint tortfeasor is, by definition, *joint*—that is, not wholly independent of and collateral to the tortfeasor. Plaintiff's other

case, *Wills v. Foster*, 229 Ill. 2d 393 (2008), is likewise distinguishable as it also concerns the collateral source rule.

¶ 52    Plaintiff also argues that section 2(b) supports that a setoff should not be available to Centegra, as it provides that the right of contribution exists only in favor of a tortfeasor who has paid more than his *pro rata* share of the common liability, and the jury found Centegra solely liable for all the damages in this case. We reject this argument. This case is not about Centegra's right to seek contribution from the Shah defendants, as Centegra does not seek contribution. Instead, this case is about a setoff of the Shah defendants' settlement for the same wrongful death and other injuries for which Centegra was found liable. See *Philippou Eye Associates, Ltd. v. Pill*, 2022 IL App (2d) 210324, ¶ 27 ("[A] plaintiff who has recovered for his damages should have no basis to complain because a defendant benefited from a setoff." (Internal quotation marks omitted.)). In other words, this case is not about Centegra's *pro rata* share of liability to plaintiff; it is about plaintiff recovering only one satisfaction of her tort claim. See *Pasquale*, 166 Ill. 2d at 368 ("Section 2(c) [of the Act] reflects the long-recognized principle in Illinois that a plaintiff shall have only one satisfaction for an injury."). Here, the jury found that Michael's wrongful death caused plaintiff $2,920,575 in damages, and those were the damages regardless of the number of defendants contributing to the damages.

¶ 53    For all these reasons, we conclude that the Shah defendants were liable in tort under section 2(c) of the Act.

¶ 54                                C. Good-Faith Finding

¶ 55    Centegra next argues that the trial court did not need to make a good-faith finding in order to set off the judgment against it. Centegra contends that there was no dispute that the settlement

between plaintiff and the Shah defendants was entered into in good faith and that, regardless, it was too late for Centegra to seek contribution even if it wanted.

¶ 56    Plaintiff responds that section 2(c) of the Act plainly and unequivocally requires that a settlement be given in good faith, and no good-faith finding was ever sought in this case. For the following reasons, we hold that an explicit finding of good faith was not necessary in this case.

¶ 57    Section 2(c) of the Act (740 ILCS 100/2(c) (West 2022)) requires that settlements be "given in good faith." The requirement of good faith in section 2(c) is the only limitation that the Act places on the right to settle. *Johnson v. United Airlines*, 203 Ill. 2d 121, 128 (2003). When a settlement under section 2(c) is given in good faith, the settlement extinguishes the settling party's contribution liability. 740 ILCS 100/2(d) (West 2022) ("The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor."); *Johnson*, 203 Ill. 2d at 128.

¶ 58    The initial burden to establish good faith under section 2(c) is on the settling parties to show, at a minimum, the existence of a legally valid settlement agreement. *Johnson*, 203 Ill. 2d at 132. Where a settlement agreement has been reached to resolve a claim and the terms of the settlement are known to the court, a preliminary showing of good faith under section 2(c) has been made and a presumption of validity arises. *Palacios v. Mlot*, 2013 IL App (1st) 121416, ¶ 20; see *Solimini v. Thomas*, 293 Ill. App. 3d 430, 437 (1997) ("A settlement is considered *prima facie* in good faith when the settling tortfeasor establishes that the settlement was supported by consideration."); *McDermott v. Metropolitan Sanitary District*, 240 Ill. App. 3d 1, 44 (1992) (providing that a *prima facie* showing gives rise to a presumption that the settlement is valid).

¶ 59    Once a presumption of validity in the settlement arises, the burden shifts to the nonsettling tortfeasor to prove the absence of good faith by a preponderance of the evidence. *Palacios*, 2013

IL App (1st) 121416, ¶ 21 (citing *Johnson*, 203 Ill. 2d at 132). Shifting this burden to the nonsettling tortfeasor is consistent with two important public policies promoted by the Act: the encouragement of settlements and the equitable apportionment of damages among tortfeasors. *Id.*

¶ 60 Here, we find there was a preliminary showing of good faith and resulting presumption of validity in the high-low agreement. Plaintiff's affidavit was filed July 25, 2024, and set forth the negotiation, agreement, and terms of the high-low agreement. The trial court confirmed the range of the high-low agreement at the hearing on Centegra's posttrial motion. Under these facts, there was a demonstration of a legally valid settlement agreement supported by consideration, as plaintiff and the Shah defendants exchanged promises: plaintiff would not enforce a judgment against the Shah defendants above $1.95 million, the Shah defendants would pay plaintiff at least $950,000, even if they were not found liable by the jury, and both parties waived their rights to appeal.

¶ 61 The burden thus shifted to Centegra to challenge the presumption of good faith, but it has not done so, instead taking the position that no good-faith finding was necessary in the first place. Centegra's position is understandable. A good-faith finding extinguishes the Shah defendants' contribution liability (740 ILCS 100/2(d) (West 2022)), but the jury found the Shah defendants not liable for any damages, so Centegra had no contribution to seek from them regardless. Instead, Centegra sought to set off the judgment against it by the high-low settlement payment.

¶ 62 We conclude that it was not necessary for the trial court to make an explicit finding of good faith for Centegra to set off the judgment pursuant to section 2(c), because the presumption of good faith in the high-low agreement remains intact and unchallenged. Our conclusion is consistent not only with the Act's promotion of settlement (*Jessee v. Amoco Oil Co.*, 230 Ill. App.

3d 337, 346 (1992)), but also with Illinois's policy against double recoveries, which section 2(c) of the Act reflects (*Pasquale*, 166 Ill. 2d at 368).

¶ 63    In addition, we note the awkward posture that a requirement for an explicit good-faith finding would entail under the facts of this case. The high-low agreement was entered into only about half an hour before the jury found the Shah defendants not liable. Once the jury found the Shah defendants not liable, Centegra lost any incentive to challenge a good-faith finding and seek contribution, since the Shah defendants' contribution to plaintiff's injury had been adjudicated as nothing. On the other hand, plaintiff would have gained incentive, or at least temptation, to claim the settlement with the Shah defendants was not in good faith, because a lack of an explicit good-faith finding would allow it to recover the entirety of damages awarded against Centegra while retaining the $950,000 settlement payment. Therefore, our conclusion that the presumption of good faith was sufficient to permit a setoff is pragmatic in addition to being consistent with the policies undergirding section 2(c) of the Act.

¶ 64    In conclusion, the trial court erred in requiring an explicit good-faith finding for Centegra's request for a setoff. Because we have determined that Centegra did not forfeit its claim for a setoff and that it satisfied the requirements of section 2(c) of the Act, we reverse the trial court's denial of its request for a setoff.

¶ 65                               D. Satisfaction of Judgment

¶ 66    Because Centegra was entitled to a setoff, we instruct the trial court on remand to enter an amended judgment reflecting a $950,000 setoff of the judgment against Centegra.

¶ 67                              III. CONCLUSION

¶ 68     For the reasons stated, we reverse the order of the circuit court of McHenry County denying

Centegra's motion for a setoff and remand for entry of an amended judgment consistent with this

disposition.

¶ 69     Reversed and remanded.

*Thompson v. Centegra Management Services, Inc.*, **2026 IL App (2d) 240667**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, No. 17-LA-184; the Hon. Kevin G. Costello, Judge, presiding. |
| **Attorneys for Appellant:** | Jacob Z. Goldstein and Hugh C. Griffin, of Hall Prangle LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Thomas J. Popovich, John A. Kornak, and Mark J. Vogg, of Law Offices of Thomas J. Popovich, P.C., of McHenry, for appellee. |